574 F.2d 997
 Richard E. GARRETT, Plaintiff-Appellant,
v.
UNITED STATES LINES, INC. and United States of America,
Defendants-Appellees.
UNITED STATES LINES, INC., Cross-Complainant-Appellant,
v.
UNITED STATES of America, Cross-Defendant-Appellee.
 Nos. 75-3241 and 75-3666.
 United States Court of Appeals,
Ninth Circuit.
 May 8, 1978.
 
 Herbert Resner, San Francisco, Cal., for plaintiff-appellant.
 John F. Cordes, Appellate Trial Atty., Dept. of Justice, Washington, D. C., Donald E. Schlotz (argued), John Edward Hurley, Jr., McCutchen, Doyle, Brown & Emerson, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before DUNIWAY, WRIGHT and SNEED, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Garrett, a seaman, appeals from an adverse judgment in his personal injury claim against his employer, United States Lines, Inc. (U.S. Lines), and the United States. U.S. Lines appeals from a judgment for the United States on U.S. Lines' cross-complaint for indemnity for payments it made as a result of Garrett's injury.[1]
 
 
 2
 Pursuant to an affreightment contract with the United States Navy, the U.S. Lines' SS American Racer anchored offshore near a Navy installation on Diego Garcia, an island in the Indian Ocean.[2] While the ship was at anchor, the Navy provided and manned landing craft (LCM's) to ferry the ship's crew to and from shore leave. Garrett first went ashore on October 11. The Navy coxswain instructed all passengers to remain in the well of the LCM during the trip, and not to board for the return trip until so ordered.
 
 
 3
 The instructions were repeated on October 15, when Garrett again went ashore. That night, he was found in an inebriated state in the back of a parked Navy truck and was told to proceed to the Harbor Operations office to await the return trip to the ship. Instead, he boarded the poorly lighted, unoccupied LCM, and broke his collarbone in the process.
 
 
 4
 Garrett testified that he fell into a hatch, apparently left open by a workman who had gone ashore for a necessary part. The Navy coxswain, however, testified that he found Garrett several feet from the open hatch. The district court refused to find that Garrett had fallen through the hatch, reasoning that it was just as plausible that he had fallen into the well.
 
 
 5
 The trial court determined that such a finding was unnecessary because it found that the United States was not negligent with respect to Garrett. The court concluded that the Navy owed little or no duty to Garrett, a trespasser making an unauthorized boarding of the LCM for purposes inimical to the legitimate interests of the Navy. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). It found that the United States had not breached this slight duty of care. The district court also rejected Garrett's claims of unseaworthiness against the United States and U.S. Lines.
 
 
 6
 Finally, finding no contractual obligation to provide ship-to-shore transportation, and relying on the reasoning of Flunker v. United States, No. 90-72C2 (W.D.Wash. June 11, 1974), the court dismissed U.S. Lines' cross-complaint against the United States for indemnity.
 
 
 7
 We affirm the dismissal of Garrett's claims, but remand the dismissal of U.S. Lines' cross-complaint for reconsideration in light of our decision in Flunker v. United States, 528 F.2d 239 (1975).
 
 
 8
 The district court's findings of fact will be overturned only if they are clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Hanson v. United States, 475 F.2d 771, 772 (9th Cir. 1973). A finding is clearly erroneous only when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952), quoting United States v. United States Gypsum Co.,333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
 
 
 9
 The district court's findings are not clearly erroneous. Garrett and others had been told not to board the LCM until instructed to do so. Garrett disregarded the orders and attempted to board the landing craft in an inherently dangerous manner, and while intoxicated.
 
 
 10
 The court also concluded that the LCM was not an appurtenance to the American Racer and, therefore, that Garrett had no claim against U.S. Lines for unseaworthiness. We agree. The LCM was not on board, Petterson v. Alaska S.S. Co., 205 F.2d 478 (9th Cir. 1953), aff'd, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954), nor moored to, Bradshaw v. The Carol Ann, 163 F.Supp. 366 (S.D.Tex.1956), the American Racer.
 
 
 11
 Under similar circumstances, we have held that the unseaworthiness of a Navy launch ferrying a seaman to shore from his employer's ship does not render the ship unseaworthy. Flunker, 528 F.2d at 246. See Victory Carriers, Inc. v. Law, 404 U.S. 202, 213-14, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). The district court properly dismissed Garrett's unseaworthiness claim against U.S. Lines. See Gutierrez v. Waterman S.S. Co., 373 U.S. 206, 213, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).
 
 
 12
 The relationship between Garrett and the United States does not support his unseaworthiness claim against the government. The doctrine of seaworthiness, imposing non-fault liability upon shipowners, developed in recognition of the inherently dangerous nature of the work of seamen. However, it extends only to seamen who are members of the crew and those performing the duties of crew members. See West v. United States, 361 U.S. 118, 120, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Kermarec, 358 U.S. at 629, 79 S.Ct. 406; The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760 (1903). Garrett's relationship to the United States and its vessel was, at most, that of a passenger to whom the doctrine is inapplicable. Isham v. Pacific Far East Line, 476 F.2d 835, 836 (9th Cir. 1973). See also Tullis v. Fidelity & Casualty Co., 397 F.2d 22, 23 (5th Cir. 1968); The Oregon, 133 F. 609, 618 (9th Cir. 1904).
 
 
 13
 Next we consider the district court's dismissal of U.S. Lines' indemnity claim against the United States. Relying on the district court's reasoning in Flunker v. United States, No. 90-72C2 (W.D.Wash. June 11, 1974), it concluded that there was no warranty of workmanlike performance because the Navy had no express contractual duty to provide ship-to-shore transport services.
 
 
 14
 In Flunker, a steward aboard the SS Hawaii was injured while his ship was executing an affreightment contract for the United States Navy at Subic Bay, Philippines. The Navy launch transporting him to shore collided with a pier and injured him.
 
 
 15
 On appeal, we reversed and held that the warranty of workmanlike performance did not arise from the affreightment contract, and that it may exist in the absence of contractual privity.[3] We concluded that the affreightment contract was but one element of the relationship between Flunker's employer and the United States. The continuing course of dealings between the United States and the steamship company evinced a symbiotic relationship, in which the warranty of workmanlike performance was implicit.[4] The government's negligence as to Flunker also breached the separate duty owed to his employer.
 
 
 16
 The district court here concluded that the United States was not negligent with respect to Garrett. This, however, may be a result of the fact that, under the circumstances, it owed Garrett such a slight duty of care.[5] The measure of care owed to each seaman does not affect the duty owed under the warranty of workmanlike performance which we perceive to require at least the exercise of ordinary and reasonable care.
 
 
 17
 In light of our holding in Flunker, we reverse the dismissal of U.S. Lines' indemnity claim against the United States, and remand for reconsideration.
 
 
 18
 The district court should consider all facets of the relationship between U.S. Lines and the United States to determine whether imposition of the implied warranty is reasonable. If the court determines that the warranty of workmanlike performance was implicitly a part of the relationship, it should then consider the Navy's conduct with respect to U.S. Lines (i. e., the dock area lighting and security, custom and procedures with respect to the transport of U.S. Lines' seamen, and the circumstances of Garrett's injuries) to determine whether the Navy's conduct breached the warranty.
 
 
 19
 Affirmed in part and reversed and remanded in part.
 
 
 20
 DUNIWAY, Senior Circuit Judge (concurring and dissenting):
 
 
 21
 I concur in the portion of Judge Wright's opinion that deals with Garrett's appeal. I dissent from the reversal and remand in the appeal of United States Lines for reconsideration of United States Lines' indemnity claim against the United States. I agree that under our decision in Flunker v. United States, 1975, 528 F.2d 239, there was a warranty of workmanlike performance running from the United States, i. e., the Navy, to the United States Lines. However, Judge Zirpoli's findings make it clear the warranty was not breached in relation to Garrett. Under those circumstances, the United States cannot be liable to United States Lines for breach of the warranty.
 
 
 22
 In its brief the United States Lines, at page 4, poses the question "Did the Navy Breach Its Warranty of Workmanlike Performance?" Its contentions in support of an affirmative answer are limited to the following:
 
 
 23
 If the Court of Appeals finds, as Garrett contends, that he fell into an open hatch which should have been closed or that the area was not properly lighted or that the Navy should have posted rules concerning mustering (Appellant Garrett's Opening Brief, p. 17), then any of these findings would necessitate a finding that the Navy had breached its warranty of workmanlike service.
 
 
 24
 No other arguments that the warranty was breached are presented or even hinted at.
 
 
 25
 We do not find, as Garrett contends, that Garrett fell into an open hatch which should have been closed, or that the area was not properly lighted, or that the Navy should have posted rules concerning mustering. Judge Zirpoli's findings, taken with the argument made in the brief of United States Lines, seem to me to require an affirmance of the denial of indemnity to the United States Lines as against the United States, although there was a warranty of workmanlike performance.
 
 
 26
 We are not overturning Judge Zirpoli's finding that Garrett's "own contributory fault was the sole cause of his accident." (emphasis supplied) On remand, what is Judge Zirpoli supposed to do? The only grounds presented to us on this appeal for finding a breach of warranty are not found supportable by us. We need not consider, and should not require that Judge Zirpoli consider, new grounds not presented to us on appeal.
 
 
 27
 Flunker was quite a different case. There, the Navy ran the landing craft on which Flunker was riding into a dock, causing him to fall and break his elbow. Thus fault on the part of the Navy, causing injury to the seaman, was established. Here, fault on the part of the Navy was not established; nor was the injury caused by the Navy; it was caused "solely" by Garrett. There is nothing for the trial judge to reconsider.
 
 
 28
 I would affirm the judgment dismissing the cross-complaint of the United States Lines.
 
 
 
 [1]
 Although U.S. Lines prevailed against Garrett's personal injury claim, it was nonetheless required to pay for Garrett's maintenance and cure under settled principles of admiralty. See Vella v. Ford Motor Co., 421 U.S. 1, 4, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527, 58 S.Ct. 651, 82 L.Ed. 993 (1938). It is indemnity for maintenance and cure payments which the shipping company seeks from the United States
 
 
 [2]
 The facts are taken from the district court's findings
 
 
 [3]
 Strict contractual privity would frustrate the utility of the workmanlike performance warranty, permitting a breaching party to avoid paying indemnity in situations where workmanlike performance had been relied upon by the party primarily liable, but fortuitously there was no contract between the shipowner and the third party. . . . On the other hand, to imply a covenant of workmanlike performance in favor of a claimed indemnitee, who is a total stranger to the shipowner and whose activities are unrelated to the ship, unmoors the theory from the unseaworthiness doctrine from which it sprung and potentially allocates losses to parties unrelated to the shipping enterprise, which losses neither party could reasonably have contemplated
 Flunker, 528 F.2d at 243 (emphasis added).
 
 
 [4]
 As we noted in Flunker, the warranty of workmanlike performance was developed to ameliorate the harshness of shipowners' liability without fault for seamen's injuries when one other than the shipowner is more at fault. Flunker, 528 F.2d at 242-43. We also noted that allowing indemnification upon a breach of this warranty allocates the financial burden to the party in the best position to minimize or correct the cause of such injuries. Id. at 243 n. 2, quoting DeGioia v. United States Lines Co., 304 F.2d 421, 426 (2nd Cir. 1962)
 
 
 [5]
 Appellee United States contends there is no reason to remand, even in light of Flunker, because the district court found that Garrett's negligence was the sole cause of his injuries. The district court's Finding of Fact 16 provides in part: "As hereinafter indicated, however, I find that plaintiff's own contributory fault was the sole cause of his accident. . . ." (Emphasis added.) Thereinafter, in Findings 18-20, the court found that the Navy had not breached a duty owing Garrett, nor was it negligent as to Garrett. We do not believe Finding 16 speaks with the clarity or meaning ascribed to it. None of the district court's findings preclude a finding that the Navy breached the duty of workmanlike performance owed to U.S. Lines