**Glen A. McCUNE, Plaintiff-Appellant,**

v.

**F. ALIOTO FISH COMPANY, a corporation, Rowe Machine Works, Inc., a corporation, Defendants-Appellees.**

**Glen A. McCUNE, Plaintiff,**

v.

**F. ALIOTO FISH COMPANY, a corporation, Defendant & Third Party Plaintiff/Appellant,**

v.

**ROWE MACHINE WORKS, INC., a corporation, Third Party Defendant/Appellee.**

**Glen A McCUNE, Plaintiff,**

v.

**F. ALIOTO FISH COMPANY, a corporation, Defendant & Third Party Plaintiff/Appellee,**

v.

**ROWE MACHINE WORKS, INC., a corporation, Third Party Defendant/Appellant.**

**Nos. 77–2111, 77–2061 and 77–1939.**

United States Court of Appeals, Ninth Circuit.

May 30, 1979.

Eric L. Henrikson, Oakland, Cal., for plaintiff-appellant.

John F. Meadows, Frederick W. Wentker, Thomas J. Boyle, San Francisco, Cal., for defendants-appellees.

Before CHOY and ANDERSON, Circuit Judges, and WYATT,* District Judge.

CHOY, Circuit Judge:

I. *Statement of the Case*

On March 29, 1973, McCune filed a complaint in district court alleging that he was injured while working aboard the *Mineo Brothers*, a fishing vessel owned by F. Alioto Fish Co. (Alioto) and operated out of San Francisco Bay and Eureka, California. McCune's complaint alleged that he was injured due to Alioto's failure to keep the *Mineo Brothers* in seaworthy condition and because of Alioto's negligence.

Only three persons were on board the *Mineo Brothers* at the time of McCune's injury: Wilson, master of the vessel; Farnham, a deck hand; and McCune, also a deck hand. The injury occurred when McCune's foot was caught by an unshielded moving part of a winch used during fishing operations. McCune was attempting to dislodge a "dog" or pawl which had become wedged tightly in the teeth of a sprocket on the drum of the winch, jamming the winch, when he was injured. As a result of the accident, McCune lost two toes.

* The Honorable Inzer B. Wyatt, Senior United States District Judge, for the Southern District of New York, sitting by designation.

On May 12, 1973, Farnham died. McCune did not have Alioto served with his complaint until February 1974. About three months later, Alioto sent a letter to Rowe Machine Works, Inc. (Rowe), the manufacturer of the winch, tendering defense of the case to Rowe. In November 1974, Alioto filed a third party indemnity claim against Rowe under Fed.R.Civ.P. 14(a). The indemnity claim set forth three theories of recovery: negligence, breach of warranty, and strict products liability. The indemnity cause was severed in February 1975.

In April and May of 1975, Alioto concluded the following agreement (the Hartford Agreement, after the name of Alioto's insurance carrier) with McCune:

(1) Defendant will pay $50,000 to Davis [McCune's attorney] as trustee in return for McCune's and Davis's covenant not to execute against F. Alioto Fish Company . . . in any amount should judgment be rendered against F. Alioto Fish Company in the pending suit . . . .. The sum of $50,000 shall not be repaid to defendant, however, if plaintiff fails to obtain judgment against defendant or recovers a judgment against defendant in an amount less than $50,000.

(2) As part of the consideration for plaintiff's covenant not to execute, defendant agreed to remain in the lawsuit through judgment and any appeal, with the undersigned as counsel, ostensibly to defend F. Alioto Fish Company, and to pursue its indemnity action against Rowe Machine Works, Inc. Defendant is also to attempt to bring Rowe into the action under Rule 14(c), FRCP.

Pursuant to the Hartford Agreement, Alioto sought to amend its third party complaint to state a 14(c) claim against Rowe.[1] McCune also amended his complaint to state a cause of action directly against Rowe on theories of breach of warranty and strict products liability.

Rowe moved to dismiss McCune's complaint against it on the ground of laches on January, 19, 1976, about six months after the amended complaints against it were filed. Although the district court found McCune's delay in naming and serving Rowe to be unreasonable and inexcusable, it concluded that Rowe had not demonstrated that it had suffered prejudice from the delay. The motion was denied without prejudice.

Subsequently, on May 11, 1976, the district court entered an order dismissing McCune's complaint against Rowe, reversing its position on the question of prejudice to Rowe due to McCune's delay. At the same time, the court also ordered the following claims dismissed: Alioto's 14(c) claim against Rowe, Rowe's cross claim for indemnity and contribution against Alioto, and McCune's claim against Alioto. The court stated that its May 11 order was not a final judgment and refused Fed.R.Civ.P. 54(b) certification on June 10, 1976.

Alioto's previously severed Rule 14(a) claim for indemnity came on for trial on June 21, 1976. After trial, the district court ultimately concluded that Alioto's indemnity claim was barred by laches and that, in any event, Alioto was not entitled to indemnity or contribution on the facts of this case.

II. *McCune's Appeal*

McCune appeals from the district court's dismissal of his claims against Alioto and Rowe. He also urges that the Hartford Agreement be set aside.

---

1. Fed.R.Civ.P. 14(c) provides:

When a plaintiff asserts an admiralty or maritime claim . . . the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff . . . and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

## A.  *McCune v. Alioto*

While the district court provided no rationale for its dismissal of McCune's complaint against Alioto, it is well-established that if any ground exists which would support a judgment, we must affirm. *See SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *United States v. Crain,* 589 F.2d 996, 1001 n. 9 (9th Cir. 1979); *United States v. Best,* 573 F.2d 1095, 1100 (9th Cir. 1978).  We conclude, as a matter of law, that the Hartford Agreement renders McCune's complaint against Alioto moot, and that the district court therefore properly dismissed the claim.

McCune sought only money damages from Alioto in redress of his injuries.  The Hartford Agreement provided that McCune, in exchange for $50,000 and Alioto's promise to attempt to bring Rowe into the suit by way of a Rule 14(c) claim, would not seek any money from Alioto in redress of his injuries.  The Agreement also provided that the money was McCune's to keep even if the court decided that he was enti-

tled to less than $50,000 after trial of his "claim."  The concrete controversy between McCune and Alioto—whether Alioto owed McCune any money and, if so, how much—was thus eliminated by the Hartford Agreement.[2]  McCune does not stand either to gain or to lose from pursuing his "claim" against Alioto.  Under these circumstances, the district court was without jurisdiction to entertain the claim, for there was no concrete case or controversy between McCune and Alioto.  *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976) ("The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement."); *Construction Industry Association v. Petaluma,* 522 F.2d 897, 903 (9th Cir. 1975) ("plaintiff must show that he has a 'personal stake in the outcome of the controversy' "), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976); 13 C. Wright & A. Miller, Federal Practice and Procedure § 3530 at 168, § 3533 (1975).  Hence, we affirm the dismissal of McCune's complaint against Alioto.[3]

---

**2.**  McCune seeks relief from the Hartford Agreement because of the district court's dismissal of Alioto's 14(c) claim.  He contends that the dismissal resulted in the failure of consideration for his giving up his right to enforce a judgment against Alioto.  He also argues that the parties "contracted under the mistaken belief that Alioto and McCune had viable 14(c) rights and that the existence of this contract would in no way interfere with the enforcement of those rights."

We note, at the outset, that the Hartford Agreement states that Alioto will *attempt* to bring Rowe into the suit by way of a Rule 14(c) claim.  Moreover, McCune merely alleges in a conclusory manner that the parties based their agreement on their belief that they could prevail on the 14(c) claim.  He presents no specific basis for his position, nor can we conceive of any.  We find untenable the argument that two parties represented by counsel throughout their negotiations could contract based upon their "belief" that the 14(c) claim was a "sure bet."  As noted *supra,* the language of the contract belies such a contention.  McCune received exactly what he bargained for: an attempt by Alioto to bring Rowe into the suit by way of a 14(c) claim and $50,000.  Thus, there was no failure of consideration and no mutual mistake.

McCune also seeks relief from the Hartford Agreement on the ground that it is void as illegal or against public policy.  Because he did not raise this argument below, we do not address it here.  *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Hansen v. Morgan,* 582 F.2d 1214, 1217 (9th Cir. 1978).  *Cf. Roberts v. Hollandsworth,* 582 F.2d 496, 499–500 (9th Cir. 1978) (federal appellate court does not usually address issues not passed upon by lower court unless substantial injustice would result).

Finally, McCune argues that the Hartford Agreement cannot be construed as a release binding him because he did not personally sign it.  However, the cases cited by McCune do not support his contention that a seaman must personally sign a release in order for it to bind him.  It is a general principle of contract law that an agent may bind his principal.  *See* 2 Williston on Contracts §§ 273–281 (3d ed. 1959).  McCune does not claim that his attorney was without authority to sign the Hartford Agreement on his behalf.  *See id.* §§ 274, 277–277B, 281.  We therefore reject this argument.

**3.**  McCune also attacks the district court's dismissal of his cause against Alioto on the ground that the court failed to make findings of fact and conclusions of law adequate under Fed.R.Civ.P. 41(b) and 52(a) to support its or-

B. *McCune v. Rowe*

The district court found that McCune's claim against Rowe was barred by laches. McCune attacks the order of dismissal on three grounds, asserting that the district court erred in (1) failing to meet the requirements of Fed.R.Civ.P. 41(b) and 52(a) as to findings of fact, (2) failing to hold an evidentiary hearing on the laches defense, and (3) finding that laches barred his claim. We reject these assignments of error.

Rule 41(b) requires that the district court make findings of fact in accordance with Rule 52(a) when it enters a judgment on the merits of a case. *See* note 3 *supra.* Dismissal of a claim on the ground that it is barred by laches is an adjudication on the merits. *See* Fed.R.Civ.P. 41(b). Therefore, McCune is correct in asserting that the district court's dismissal of his claim against Rowe must have been supported by findings of fact sufficient to meet the requirements of Rule 52(a). However, we cannot agree with McCune that the district court failed to meet the Rule 52(a) requirements when it dismissed his claim against Rowe.

In order to prevail upon a laches defense, a party must establish that there has been inexcusable delay and prejudice to it as a result of that delay. *See Espino v. Ocean Cargo Line, Ltd.,* 382 F.2d 67, 69 (9th Cir. 1967). In its order dismissing McCune's claim against Rowe, the district court expressly found that McCune had unreasonably and inexcusably delayed and that McCune's delay prejudiced Rowe. The court also referred to its earlier findings of fact in Rowe's initial motion for dismissal which discussed McCune's delay and the effects of that delay in great detail. Finally, the district court explicitly stated that its order of dismissal was not a final judg-

ment; and prior to entering final judgment as to all claims in this case, it made further detailed findings on delay and the prejudice to Rowe resulting from that delay.

■ Not all of the findings of fact necessary to support a judgment or order need appear in a single document. *Rayonier, Inc. v. Polson,* 400 F.2d 909, 922–23 (9th Cir. 1968). Here, looking to the whole record, and specifically to the three sets of findings made by the district court, we find findings of fact sufficiently explicit to give us a clear understanding of the basis of the court's decision. *See Forsyth v. Cessna Aircraft Co.,* 520 F.2d 608, 613–14 (9th Cir. 1975); *Handeland v. Commissioner,* 519 F.2d 327, 329 (9th Cir. 1975); *Henry C. Beck Co. v. Ross Island Sand & Gravel Co.,* 456 F.2d 316, 320 (9th Cir. 1972); *Rayonier, Inc. v. Polson,* 400 F.2d at 923; *Dale Benz, Inc. v. American Casualty Co.,* 303 F.2d 80, 82 (9th Cir. 1962). Thus, the district court's findings meet the requirements of Rules 41(b) and 52(a).

■ McCune argues that the district court erred in failing to hold an evidentiary hearing in connection with its dismissal of his claim against Rowe. While we have stated that "the factual issues involved in a laches defense can *rarely* be resolved without some preliminary evidentiary inquiry," *Espino v. Ocean Cargo Line, Ltd.,* 382 F.2d at 70 (emphasis added), an evidentiary hearing was not required in this case.

■ Here, the salient facts are not in dispute. McCune admits that he was injured on April 22, 1971. He also admits on this appeal, that Rowe did not have notice of its potential involvement until May 28, 1974.[4] He does not contest the fact that

---

der of dismissal. Although Rule 41(b) requires that a district court make findings of fact pursuant to Rule 52(a) when it "renders judgment on the merits against the plaintiff," it also provides that a dismissal for lack of jurisdiction is not a judgment on the merits. Since we have concluded that the district court was *without jurisdiction* to hear McCune's cause against Alioto and properly dismissed McCune's complaint in that regard, we must reject the asser-

tion that findings of fact were necessary to the dismissal.

4. Rowe was given notice on May 28, 1974, by Alioto, not McCune, in a letter tendering defense of the case to Rowe. Alioto brought an indemnity claim against Rowe under Fed.R. Civ.P. 14(a) on November 8, 1974. McCune did not amend his complaint seeking to state a cause of action against Rowe until June 20, 1975.

Farnham, an eyewitness to the accident and a participant in the successful assault on the jammed winch, died on May 12, 1973, more than one year before Rowe had notice of the suit. Finally, he does not dispute the fact that although Wilson and Farnham managed to free the jammed winch after the accident, Wilson can no longer remember how they succeeded.

As we previously noted, the two elements of the defense of laches are inexcusable delay and prejudice to the defendant. See *Espino v. Ocean Cargo Line, Ltd.*, 382 F.2d at 69. McCune offers no excuse for his delay of over three years in notifying Rowe of its potential liability. *Cf. id.* at 69 (Espino alleged reasons for his delay in his complaint—he was uneducated; he did not speak, read or write English; he thought his rights were limited by statute; he did not consult a lawyer for over one year after the accident). Instead, McCune merely contends that Rowe suffered no prejudice because of the delay.

On this appeal, McCune argues that Rowe is strictly liable to him as a manufacturer.[5] We have held that in admiralty cases based upon strict products liability comparative fault is a factor mitigating liability: "all of plaintiff's conduct can be compared to the defendants' conduct." *Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.*, 565 F.2d 1129, 1139 (9th Cir. 1977). This partial defense makes the reasonableness of McCune's actions in attempting to unjam the winch an important issue in this case. The steps taken by Wilson and Farnham after the accident to free the winch are relevant to this issue of reasonableness.

Therefore, based on the undisputed facts and the current status of the law of strict products liability in admiralty cases in this Circuit, we cannot say that the district court "plainly erred" in finding that Farnham's death and Wilson's loss of memory prejudiced Rowe. *See Espino v. Ocean Cargo Line, Ltd.*, 382 F.2d at 70, *citing Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 215, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).[6] And because the district court's conclusion that McCune's claim against Rowe is barred by laches is supportable by the undisputed facts in this case, we cannot say that the court erred in not holding an evidentiary hearing on the laches defense.

Having rejected each of the errors urged by McCune, we affirm the district court's dismissal of his complaint against Rowe.

## III. *Alioto's Appeal*

Alioto appeals from the district court's judgment in favor of Rowe on Alioto's indemnity claim.[7] It contends that the court erred in finding that Rowe had no obligation to indemnify Alioto either under the doctrine announced in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), or otherwise.[8]

### A. *Ryan-type Indemnity: Warranty of Workmanlike Service*

■ The district court stated:

The relationship between ALIOTO and ROWE does not give rise to the obliga-

---

We need not decide whether May 28, 1974, November 8, 1974, or June 20, 1975, is the relevant date in a laches determination. Relying on the earliest of these dates, we find that the district court did not plainly err in its conclusion that McCune's claim against Rowe is barred by laches.

5. McCune has apparently abandoned his breach of warranty theory on this appeal.

6. McCune argues that Rowe's delay in deposing Wilson until March 3, 1976, clearly establishes that the prejudice from the loss of testimony concerning the steps which Wilson and Farnham took to unjam the winch after McCune's accident was not due to his delay. The district court was presented with both the

fact of McCune's delay and the fact that Rowe waited for some time before deposing Wilson. The district court found that the prejudice was due to McCune's delay. We cannot say that this finding of fact is clearly erroneous. Fed.R. Civ.P. 52(a). It must therefore stand.

7. Alioto does not appeal from the district court's dismissal of its Fed.R.Civ.P. 14(c) claim.

8. Alioto also claims that the district court erred in holding that its indemnity claim was barred by laches. However, we need not reach this assignment of error, given our disposition of Alioto's other claims.

tion to indemnify enunciated in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133] (1956). [Citations omitted.] Furthermore, ALIOTO and not ROWE had complete control and supervision over the installation of the winches and the danger from the alleged defect in the winches could have been eliminated at the time of installation (as ALIOTO did on the inboard side of the winches). Consequently, a crucial element in a *Ryan* case, performance of services by ROWE without supervision or control by ALIOTO, is missing. [Citation omitted.]

Alioto contends that the district court erred in that *Ryan* -type indemnity is available in a case such as the one at bar. It argues that although *Ryan* -type indemnity is "usually" encountered only in "service" type situations, "the reasoning behind *Ryan* and its progeny would logically extend maritime indemnity to shipowners liable because of injuries caused by a manufacturer's defective products supplied to the vessel for use aboard."

In *Ryan*, the Supreme Court was faced with the plight of a shipowner whose strict liability to a longshoreman for unseaworthiness was the result of a stevedoring company's improper storage of cargo. To ease the burden which the doctrine of unseaworthiness imposes on shipowners, "who often are held vicariously liable for the acts of third persons causing injury to seamen," *Flunker v. United States*, 528 F.2d 239, 242 (9th Cir. 1975), the Court held that the shipowner could recover by way of indemnity from the stevedoring company. It said:

> The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Compe-

tency and safety of stowage are inescapable elements of the *service* undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual obligation. It is of the essence of petitioner's stevedoring contract. *It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product.* 350 U.S. at 133–34, 76 S.Ct. at 237 (emphasis added); *see Hanseatische Reederei Emil Offen v. Marine Terminals*, 590 F.2d 778, 781 (9th Cir. 1979).

The *Ryan* doctrine has been extended to non-stevedoring cases. *See, e. g., Garrett v. United States Lines, Inc.*, 574 F.2d 997 (9th Cir. 1978) (launch service); *United States v. San Francisco Elevator Co.*, 512 F.2d 23 (9th Cir. 1975) (repairs undertaken by subcontractor); *United States v. Tug Manzanillo*, 310 F.2d 220 (9th Cir. 1962) (towing). It also "comprehends situations where there is no contractual relationship between the indemnitor and indemnitee." *Flunker v. United States*, 528 F.2d at 243.[9]

However, Alioto's complaint is that Rowe supplied it with a defective *product*, not unworkmanlike *services*. It fails to cite any cases in which *Ryan's* warranty of workmanlike services has been transformed into a warranty covering the manufacture of products. Nor do we believe such a transformation is necessary or proper. Therefore, we must agree with the district court that the relationship between Alioto and Rowe does not give rise to a *Ryan* -type warranty.

**B.** *Other Claims for Indemnity: Strict Liability, Negligence and Breach of Warranty*

After trial of Alioto's Rule 14(a) claim for indemnity, the district court made the following findings and conclusions, among others: (1) there was no defect in the winches

---

**9.** Congress has eliminated the *Ryan* doctrine in that class of cases in which it was first established. *See* 33 U.S.C. § 905(b); *Flunker v. United States*, 528 F.2d 239, 242 (9th Cir. 1975). However, "the rationale and holdings retain vitality for [cases involving injuries to] seamen." 528 F.2d at 242; *see Garrett v. United States Lines, Inc.*, 574 F.2d 997, 999–1000 (9th Cir. 1978).

supplied by Rowe which were a proximate cause of McCune's injuries, (2) McCune's injuries were due solely to his own negligence as well as that of Alioto and its employees, (3) Rowe made no warranties of any kind concerning the winches, (4) the uncovered moving parts in which McCune caught his foot were "open, obvious, and apparent to anyone," (5) the winches were installed aboard the *Mineo Brothers* in 1962, (6) the injury to McCune occurred on April 22, 1971, and (7) Alioto did not complain to Rowe about the winches before the accident and did not notify Rowe of the accident until about June 1, 1974. From these findings and conclusions, the district court ultimately concluded that Alioto was not entitled to indemnity or contribution from Rowe for amounts paid to McCune as compensation for his injuries.

A district court's findings of fact can be overturned only if they are clearly erroneous. Fed.R.Civ.P. 52(a): *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Garrett v. United States Lines, Inc.*, 574 F.2d at 999; *Hanson v. United States*, 475 F.2d 771, 772 (9th Cir. 1973). While negligence and proximate cause are, strictly speaking, mixed questions of law and fact, a district court's findings/conclusions regarding negligence and proximate cause may only be overturned when they are clearly erroneous. *See McAllister v. United States*, 348 U.S. at 20–23, 75 S.Ct. 6; *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978); *United States v. Standard Oil Co.*, 495 F.2d 911, 916 (9th Cir. 1974); *United States v. Soriano*, 366 F.2d 699, 703–04 (9th Cir. 1966); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2590 (1971). "A finding is clearly erroneous only when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Garrett v. United States Lines, Inc.*, 574 F.2d at 999, quoting *United States v. Oregon State Medical Society*, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978 (1952), *and United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Having carefully reviewed the record in this case, we are not left with "the definite and firm conviction that a mistake has been committed" by the district court in making the findings above mentioned. Therefore, those findings must stand. And because the findings must stand, we must affirm the district court's judgment in favor of Rowe: Alioto cannot establish crucial elements of its various theories of indemnification and contribution given these facts.

### 1. Strict Products Liability

■ This court has adopted Restatement (Second) of Torts § 402A as the law of products liability in admiralty cases. *Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.*, 565 F.2d at 1135. In order for a plaintiff to prevail on a strict products liability claim under § 402A, he must establish, *inter alia*, that his injury *was caused by* an *unreasonably dangerous defect* in a product sold or manufactured by the defendant. *Id.*; Restatement (Second) of Torts § 402A(1) (1965). The district court's finding that there was *no defect* in the winches sold by Rowe *which was a proximate cause* of McCune's injury thus precludes Alioto's recovery under this theory.

### 2. Negligence

■ Likewise, Alioto cannot recover on a negligence theory. The district court's finding that McCune's and Alioto's negligence were the only proximate causes of McCune's injuries prevents Alioto from establishing that any negligence on the part of Rowe was a proximate cause of McCune's injury. Thus, Alioto cannot establish one of the crucial elements of a negligence claim against Rowe. *See* W. Prosser, Handbook of the Law of Torts § 30, at 143 (4th ed. 1971).

### 3. Breach of Warranty

■ Finally, the district court's findings prevent Alioto from stating an indemnity or contribution claim based upon a breach of warranty. The district court's finding

that Rowe made no warranties (as we have previously stated), is not clearly erroneous. Therefore, Alioto cannot succeed on an express warranty theory.

However, a finding that Rowe did not expressly make any warranties does not necessarily preclude the implication of certain warranties as a matter of law. Assuming, as does Alioto, that U.C.C. § 2–315— the U.C.C. provision on implied warranties of fitness for a particular purpose—is applicable to Rowe's sale of the winches, and also assuming, *arguendo*, that the requirements for an implied § 2–315 warranty were met and that the lack of a guard over the moving parts which caught McCune's foot constituted a breach of the § 2–315 warranty, the district court's findings nonetheless preclude Alioto's recovery on its implied warranty theory.[10]

Section 2–607(3)(a) of the U.C.C. conditions recovery for breach of a warranty of fitness for a particular purpose upon the buyer's notifying the seller of the breach. If the buyer fails to notify the seller of a breach of the § 2–315 warranty within a reasonable time after he discovers or should have discovered the breach, the buyer is without remedy for the breach. U.C.C. §§ 2–607(3)(a), 2–714; T. Quinn, Uniform Commercial Code Commentary and Digest ¶ 2–315[A][3] (1978).[11]

The district court found that the exposed moving parts were open and obvious to all. If the lack of a guard over these parts was a breach of warranty, it should have been discovered at or near the time the winches were installed aboard the *Mineo Brothers* in 1962. Alioto notified Rowe of the alleged breach of warranty in 1974—more than ten years after it should have discovered the breach. As a matter of law a delay of more than ten years between the time a breach should have been discovered and notification is not commercially reasonable. *See* U.C.C. §§ 1–204(2), 2–607(3)(a) & comment 4. Hence, Alioto cannot recover on its implied warranty theory.[12]

Having concluded that every theory of indemnity liability urged by Alioto is unavailing, we affirm the district court's judgment in favor of Rowe on Alioto's indemnity claim, as we have affirmed the district court's orders and judgment in all other respects.[13]

AFFIRMED.

---

**10.** On this appeal, Alioto does not argue that Rowe breached any implied warranty of merchantability.

**11.** Alioto contends that under California law, notice to a manufacturer is not required. However, the authority cited by Alioto for this proposition at most establishes that notice to a manufacturer is not required when a plaintiff is proceeding on a strict products liability theory. Assuming without deciding that California law applies here, we note that California has adopted §§ 1–204, 2–607 and 2–714 from the U.C.C. with only minor stylistic changes. *See* Cal. Comm. Code §§ 1204, 2607, 2714. Thus, even

under *California law, timely notice is required* for a breach of warranty claim.

**12.** While Alioto does not contend, on this appeal, that Rowe breached its implied warranty of merchantability, *see* U.C.C. § 2–314, a breach of a § 2–314 warranty is also subject to § 2–607. T. Quinn, Uniform Commercial Code Commentary and Digest ¶ 2–314[A][6] (1978).

**13.** Because of our disposition of McCune's and Alioto's appeals in this case, we need not address the contentions contained in Rowe's cross-appeal.