**Glenn M. HEBERT, Plaintiff-Appellant,**

v.

**AIR LOGISTICS, INC. and Brown & Root, Inc., Defendants-Appellees.**

No. 83–4150

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1983.

854

Domengeaux & Wright, Bob F. Wright, Richard J. Putnam, Jr., Abbeville, La., for plaintiff-appellant.

McGlinchey, Stafford & Mintz, Kenneth H. Laborde, William V. Dalferes, Jr., New Orleans, La., for Air Logistics.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Michael G. Durand, Lafayette, La., for Brown & Root.

Before CLARK, Chief Judge, RUBIN and JOLLY, Circuit Judges.

PER CURIAM:

Glenn Hebert, plaintiff in this action in admiralty, appeals the district court's granting of summary judgment in favor of defendants Air Logistics, Inc. and Brown & Root, Inc. Finding no genuine issue of material fact, we affirm the decision of the district court.

## I.

Hebert was co-piloting a helicopter when it crashed into the Gulf of Mexico shortly after taking off from a Brown & Root barge situated off the Louisiana coast. He sustained serious injuries in the accident. At the time of the accident he was performing his regular employment duty of transporting Brown & Root employees from the shore to their employment stations on one of several pipe laying barges in a Brown & Root fleet engaged in laying pipeline offshore. Although the helicopter had pontoon landing gear enabling it to take off from and land on water, and also had floating devices for emergency ditchings, it was designed primarily to operate from solid surfaces.

Hebert was hired directly by Air Logistics, Inc. After he completed the Air Logistics training program, the company assigned him to a helicopter servicing the Brown & Root barge fleet. The assignment was for an indefinite period, and, in fact, had lasted three or four months before the crash occurred. Neither the helicopter nor Hebert serviced other Air Logistics customers while assigned to the Brown & Root fleet.

Upon arrival at work each morning Hebert reported to his immediate supervisor, the lead pilot for Air Logistics. Each day he also maintained radio contact with a dispatcher from Brown & Root who told him who his passengers would be and their pick-up and destination points. Except for these necessary directions he received from Brown & Root, Hebert was under the supervision and control of his employer, Air Logistics. Air Logistics paid Hebert's salary and also serviced and maintained the helicopter.

During the brief time Hebert was on the barges, Brown & Root allowed him to walk around on deck and to go down to the galley for coffee or food. Brown & Root, however, specifically requested that Hebert stay away from other areas of the barges. Hebert did not participate in the laying of pipeline and did not have the safety equipment worn by workers on the barges. He returned home to shore each night.

The accident giving rise to this suit occurred immediately after Hebert had picked up two passengers from one of the Brown & Root barges. His helicopter crashed just after clearing the barge, falling from about a hundred yards above the water.

Several months after the accident Hebert filed this suit against Air Logistics and Brown & Root in the United States District Court for the Western District of Louisiana, alleging counts in negligence under the Jones Act, 46 U.S.C. § 688, and for maintenance and cure and breach of the warranty of seaworthiness under general maritime law.

Air Logistics and Brown & Root both filed motions for summary judgment. Hebert responded by filing cross-motions asking the district court to hold as a matter of law that the helicopter was a vessel, or that it was an appurtenance to the Brown & Root fleet, or that Hebert was a crew member of the Brown & Root fleet by virtue of his permanent assignment to that fleet.

The district court granted the defendants' motions for summary judgment on the basis that a helicopter is not a vessel. On Hebert's motion for rehearing, the district court held that Hebert was not a member of the crew of the Brown & Root fleet and that the helicopter was not an appurtenance to the fleet.

Hebert again moved for rehearing on the basis of a factual misunderstanding by the court. The court had not understood that Hebert reported to a Brown & Root dispatcher each morning, as well as to his Air

Logistics supervisor. Deeming this fact to be of no legal significance, the district court affirmed its earlier decisions.

Hebert appeals all three determinations by the district court, arguing that a helicopter is a vessel, that he was permanently assigned to the Brown & Root fleet, and that the helicopter is an appurtenance to the fleet.

## II.

■ To recover damages from his employer in maritime tort or under the Jones Act, Hebert must be a "seaman." A seaman is one who is assigned permanently to a vessel, and whose duties contribute to the mission or operation of the vessel. *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959). Thus, the helicopter's status as a vessel is crucial to Hebert's first argument.

This court disposed of the question whether a helicopter used to ferry workers to and from offshore locations is a vessel in *Barger v. Petroleum Helicopters, Inc.,* 692 F.2d 337 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2430, 77 L.Ed.2d 1316 (1983) We held that it is not. In *Barger* the plaintiff, like Hebert, was a helicopter pilot who transported workers from the mainland to their employment stations in the Gulf of Mexico. One day, the helicopter he was flying crashed into the Gulf forty miles offshore, killing all aboard. Barger's estate filed suit, alleging counts in maritime tort and under the Jones Act. A central issue in the case was whether the helicopter was a vessel within the meaning of the Act and maritime tort law.

■ In holding that the helicopter was not a vessel, the court noted that even if equipped with pontoons that allowed them to land on water, helicopters are vehicles designed primarily to travel in the air. "Neither a plane nor a helicopter," said the court, "undergoes a miraculous transformation from aircraft to vessel when pontoons are attached to it, and their pilots do not by this act become members of a 'vessel's' crew." *Id.* at 339. Characterizing the accident in *Barger* as an aircraft disaster, the court decided the plaintiff could not recover under the Jones Act or in maritime tort. *Id.* at 340. The decision in *Barger* controls this case. Hebert's helicopter is not a vessel.

## III.

■ Hebert next argues that he was permanently assigned to the Brown & Root fleet of barges. Certainly, the fleet of barges would satisfy the "vessel" requirement of *Robison. E.g. Bazile v. Bisso Marine Co., Inc.,* 606 F.2d 101 (5th Cir.1979). The undisputed facts of this case, however, simply will not support the conclusion that his assignment was either permanent or an assignment to the fleet.

■ In *Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277 (5th Cir.1981), holding summary judgment on the issue of seaman status to be inappropriate against welders who performed a substantial portion of their work on barges, this court recognized that the permanency requirement of the *Robison* test of seaman status is not literal. In order to be a seaman within the meaning of the Jones Act, the plaintiff need have, however, "more than a transitory connection with a vessel or a specific group of vessels." *Id.* at 281, *citing Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir. 1977). Recently, this court further explained that only plaintiffs who with some degree of regularity and continuity perform a substantial part of their work aboard a vessel may satisfy the permanent assignment requirement of *Robison. Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240, 246 (5th Cir.1983).

Hebert's connection to the Brown & Root fleet was transitory. He did not regularly and continually perform a substantial part of his work on board the barges, rarely being aboard any barge for more than a few minutes at a time. He performed no pipe laying work on the barges and specifically had been requested not to go into the work spaces on the barge. Hired as a pilot, he performed most of his work duties in the air between barges or between the shore and a barge.

If Hebert were assigned to anything permanently, it was an Air Logistics helicopter and not the Brown & Root fleet. Air Logistics paid Hebert's salary, maintained the helicopter, and, except for the purely perfunctory directions he received from the Brown & Root dispatcher, directly controlled and supervised him. Finally, the nature of the business relationship between Brown & Root and Air Logistics was such that Hebert's service to the Brown & Root fleet might discontinue at any time without affecting Hebert's relationship with Air Logistics.

## IV.

 Hebert's final argument is that the helicopter was an appurtenance to the Brown & Root fleet. Finding no Fifth Circuit cases controlling, the district court, citing *Garrett v. United States Lines, Inc.,* 574 F.2d 997 (9th Cir.1978) and *Flunker v. United States,* 528 F.2d 239 (9th Cir.1975), concluded that because the helicopter was not moored to the barges or connected to them in any way, it could not be an appurtenance. We agree.

In *Garrett,* the Ninth Circuit held that an independently contracted launch used to ferry seamen from ship to shore and back was not an appurtenance to the mother ship. 574 F.2d at 999. Similarly, in *Flunker,* the court noted that the unseaworthiness of an independently contracted launch used to ferry seamen from ship to shore and back did not render the mother ship unseaworthy. 528 F.2d at 246. Like the seagoing launches in *Garrett* and *Flunker,* Hebert's helicopter was an independently contracted craft. It was not permanently assigned or physically connected to the barges, nor did it use the barges as home port. Consequently, the helicopter was not an appurtenance to the fleet.

Hebert would analogize the helicopter to a gangplank that does no more than provide safe ingress and egress to and from the barges. We do not find this analogy valid. Unlike the gangplank, which is a physical extension of the vessel, a helicopter, like a seagoing launch, is an independent craft. It is not part of the barge's regular equipment. It has its own propulsion devices and crew. *Cf. Law v. Sea Drilling Corp.,* 510 F.2d 242, 248 & n. 17 (5th Cir.1975) (seagoing tender ship's ramp-gangway is an "extremity" of the ship and part of its regular equipment).[1]

Because we have determined that Hebert is not a seaman within the meaning of the Jones Act and general maritime tort, the district court's dismissal of Hebert's Jones Act and maritime tort claims is

AFFIRMED.

---

1. Further, cases that establish that the duty to provide safe ingress and egress to the ship have done so because of the shipowner's warranty of seaworthiness. *Law,* 510 F.2d at 248; *Superior Oil Co. v. Trahan,* 322 F.2d 234, 235 (5th Cir. 1963). The warranty of seaworthiness runs only to seamen, and we have determined already that Hebert is not a seaman because a helicopter is not a vessel and because he was not assigned permanently to the Brown & Root fleet.