**Vilma Tablas CRUZ, Plaintiff-Appellant,**

v.

**HENDY INTERNATIONAL CO., and Mutual Life Insurance Company of New York, Defendants-Appellees.**

No. 77-2700.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1981.

---

Frank A. Silvestri, Robert McComiskey, New Orleans, La., for plaintiff-appellant.

Charles F. Lozes, New Orleans, La., for defendants-appellees.

ON PETITION FOR REHEARING

Before FAY, RUBIN and HATCHETT, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

■ This circuit decided four years ago that the wife of a seaman who survives after suffering a debilitating personal injury has no claim for the loss of consortium she would have enjoyed had he not been injured. *Christofferson v. Halliburton Co.*, 534 F.2d 1147 (5th Cir. 1976), *rehearing en banc denied*, 542 F.2d 1174 (5th Cir. 1976). Bound by that decision, we affirmed a district court judgment dismissing a complaint by another seaman's wife. *Cruz v. Hendy International Co.*, No. 77–2700 (5th Cir. Oct. 25, 1979) (unpublished opinion). Thereafter the United States Supreme Court, in *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980), held that general maritime law authorizes the wife of a harbor worker injured nonfatally aboard a vessel in state territorial waters to maintain an action for damages for loss of her husband's society. At the time of the Supreme Court's *Alvez* decision, Cruz's petition for rehearing en banc was pending before this court. We denied that petition without prejudice and remanded this case to the original panel for a rehearing without oral argument to consider the effect of the Supreme Court's *Alvez* decision on *Christofferson* as precedent and on the claim asserted by Mrs. Cruz. Overruling *Christofferson* in part, we now hold that the spouse of a seaman whose nonfatal injuries are attributable to the unseaworthiness of a vessel has a general maritime law cause of action for loss of his society.

I.

Jose Tito Cruz suffered personal injuries in 1974, while employed as a member of the crew of a vessel, the LOUISIANA BRIMSTONE, working in Louisiana territorial waters. He filed suit asserting claims

against the vessel owner for negligence under the Jones Act, 46 U.S.C. § 688, and for unseaworthiness of the vessel under general maritime law. He contended that he had suffered severe brain damage, his personality had been altered drastically, his mental capacity had been greatly impaired and he was totally and permanently disabled. Finding the vessel unseaworthy and the owner negligent, a jury awarded him $350,000 in damages. Because the jury also found Cruz to have been contributorily negligent, the court reduced the jury award and entered judgment in the amount of $280,000. After the judgment had been satisfied, his wife filed this action seeking damages for the loss of consortium, the loss of services and the loss of society of her husband under the Jones Act and general maritime law.

*Alvez* relied upon the recognition in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), that wrongful death damages may be recovered for loss of society and upon the allowance of recovery for loss of consortium in forty-two states, but did not distinguish these concepts. While the two are similar, consortium [1] generally includes such pecuni-

ary elements as loss of services and such non-pecuniary components as love, companionship, affection, society, sexual relations, comfort and solace,[2] all summed up in *Gaudet* as "loss of society." *Gaudet* disallowed recovery for "anguish or grief," *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. at 585 n. 17, 94 S.Ct. at 815 n. 17, 39 L.Ed.2d at 21 n. 17,[3] and it is not clear whether any of those states allowing recovery for loss of consortium would include this type of emotional distress as an element of damages. Certainly, they must be excluded from consideration as part of the loss of society remedy. *Gaudet* also mandates that the damages for loss of society be so ascertained as to prevent a second recovery of those pecuniary losses recoverable by the injured spouse in his action.

## II.

The shores of the legal area we must navigate have been frequently charted, *see generally* G. Gilmore & C. Black, The Law of Admiralty 272 *et seq.*, Chapter VI (2d ed. 1975), so we merely sketch its most prominent features. First we inject, however, the ounce of history.

---

1. While the compensable elements embraced in loss of consortium vary somewhat from state to state, in general they include what are said to be tangible (pecuniary) losses and intangible (non-pecuniary) hurt. *See generally* Weisman, Wife's Action for Loss of Consortium, 20 Clev. St.L.Rev. 315 (1971); McKay, Is a Wife Entitled to Damages for Loss of Consortium?, 64 Dick.L.Rev. 57 (1959); Hume, Liability to Wife for Loss of Consortium: An Update, 24 Fed'n Ins. Counsel Q. 36 (No. 4, 1974); Clark, The Wife's Action for Negligent Impairment of Consortium, 3 Fam.L.Q. 197 (1969); Leaphart & McCann, Consortium: An Action for the Wife, 34 Mont.L.Rev. 75 (1973); Simeone, The Wife's Action for Loss of Consortium—Progress or No?, 4 St. Louis U.L.J. 424 (1957); Annotation: Measure and Elements of Damages in Wife's Action for Loss of Consortium, 74 A.L.R.3d 805 (1976).

The pecuniary element is the loss of the services that would have been furnished by the injured spouse, but not loss of support provided by the injured spouse because the injured person is entitled to recover loss of future wages and these are as available for the non-injured spouse's support as if the injury had not occurred. W. Prosser, The Law of Torts § 125,

at 894 (4th ed. 1971) (because injured husband may recover for loss of his earning power, wife may not recover for loss of support in her consortium action); 1 F. Harper & F. James, The Law of Torts § 8.9, at 639 (1956) (support is recoverable by injured spouse). *See, e. g., Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974); *Tribble v. Gregory*, 288 So.2d 13 (Miss.1974); *Kotsiris v. Ling*, 451 S.W.2d 411 (Ky.1970); *Smith v. Tri-State Culvert Manufacturing Co.*, 126 Ga.App. 508, 191 S.E.2d 92 (1972) (spousal claim for consortium may not contain an item of damages belonging to the injured spouse).

2. *See* Annotation: Measure and Elements of Damages in Wife's Action for Loss of Consortium, 74 A.L.R.3d 805, 814 (1976); 1 F. Harper & F. James, The Law of Torts, § 8.9, at 635 (1956) (consortium includes elements of services, society and sexual intercourse).

3. *See Sincere Navigation Corp. v. United States*, 529 F.2d 744, 753 (5th Cir. 1976) (no recovery for mental anguish or grief under *Gaudet*); *McDonald v. Federal Barge Lines, Inc.*, 496 F.2d 1376 (5th Cir. 1974).

▆ An injured member of the crew of a vessel has a cause of action at law under the Jones Act for damages resulting from negligence[4] and a separate cause of action in admiralty, under general maritime law, for damages resulting from unseaworthiness.[5] Because the unseaworthiness action is founded solely on general maritime law, it constitutes a claim in admiralty and, absent diversity, there is no right to a jury trial.[6] However, the action at law under the Jones Act and the unseaworthiness admiralty claim may be combined in a single suit[7] with the right of trial by jury even in the absence of diversity.[8] The seaman may thus recover for all of his pecuniary damages including such damages as the cost of employing someone else to perform those domestic services that he would otherwise have been able to render but is now incapable of doing.

▆ The Jones Act by its terms provides no remedy to the spouse of a seaman who survives his injury and it permits no award for non-pecuniary losses. It has been held that, therefore, the spouse of an injured seaman cannot recover under the statute for emotional loss and the other intangible items of damages embraced in the concept of consortium.[9] If the seaman dies as a result of his injuries, however, the loss of services that he would have rendered his spouse is recoverable by her in her wrongful death action as part of the damage she suffers as a result of his death whether under the Jones Act,[10] the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.* [DOHSA], or under the general maritime law death action created by *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).[11]

▆ Loss of society, however, as distinguished from loss of services, is not pecuniary in nature. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 585–87, 94 S.Ct. 806, 815–16, 39 L.Ed.2d 9, 21–22 (1974). In *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524

4. 46 U.S.C. § 688; *Hopson v. Texaco, Inc.*, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966); *Braen v. Pfeifer Oil Transportation Co.*, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959); *Allen v. Seacoast Products, Inc.*, 623 F.2d 355 (5th Cir. 1980).

5. *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967).

6. *See Russell v. Atlantic & Gulf Stevedores*, 625 F.2d 71 (5th Cir. 1980) (no right to jury trial for claim based on general maritime law); *William P. Brooks Construction Co. v. Guthrie*, 614 F.2d 509 (5th Cir. 1980) (admiralty affords no right to a jury trial); *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249 (5th Cir. 1975); Fed.R. Civ.P. 38(e). *See generally* 5 Moore's Federal Practice ‘ 38.35 (Supp.1980). The right to a jury trial when jurisdiction is based on diversity stems from the saving-to-suitors clause, 28 U.S.C. § 1333(1). *See* G. Gilmore & C. Black, The Law of Admiralty § 1–13 (2d ed. 1975).

7. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

8. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). The parties have stipulated that the citizenship of the named defendants is diverse from that of Mrs. Cruz.

9. *Cf. Christofferson v. Halliburton Co.*, 534 F.2d 1147 (5th Cir. 1976) (injured seaman's wife may not recover for loss of *consortium* under Jones Act); *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257, 266 (2d Cir. 1963), *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964) (dicta) (injured seaman's wife could not recover for loss of *consortium* under Jones Act).

10. *See Michigan Central R.R. Co. v. Vreeland*, 227 U.S. 59, 71, 33 S.Ct. 192, 196, 57 L.Ed. 417, 422 (1913) (FELA provision for pecuniary loss does not exclude damages for loss of services); *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524, 526 (5th Cir. 1979) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927–28, 64 L.Ed.2d 815 (1980) (dicta) (FELA permits recovery for loss of services as pecuniary element of damages in death action); *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 633 (6th Cir.), *petition for cert. dismissed*, 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978); *Petition of United States Steel Corp.*, 436 F.2d 1256, 1277 (6th Cir. 1970), *cert. denied sub nom.*, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1971). *See also* 2 Benedict on Admiralty § 86, at 7–46 & n. 6 (7th ed. 1975).

11. *See* 2 Benedict on Admiralty § 86, at 7–43 & 7 46 (7th ed. 1975).

(5th Cir. 1979) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927–28, 64 L.Ed.2d 815 (1980), we held that, if the seaman meets death, the settled interpretation of the Jones Act precludes recovery by a surviving spouse for loss of his society.[12] However, in *Ivy* we reserved the question whether the spouse of a deceased seaman is entitled to damages for loss of his society if his death results from unseaworthiness. *Ivy v. Security Barge Lines, Inc.*, 606 F.2d at 528 n. 8. Subsequent to our decision in *Ivy*, we held in two cases in which a Jones Act claim was combined with a claim for unseaworthiness that the widow of a Jones Act seaman might recover for loss of society in a death action brought under the general maritime law unseaworthiness doctrine. *Smith v. Ithaca Corp.*, 612 F.2d 215 (5th Cir. 1980); *Hlodan v. Ohio Barge Lines, Inc.*, 611 F.2d 71 (5th Cir. 1980).

*Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), held that under the nonstatutory general maritime law wrongful death action shaped by *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the widow of a longshoreman who died as a result of injuries received aboard a vessel in state territorial waters could recover damages for the loss of her deceased husband's society. In *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980), the Supreme Court extended the general maritime law remedy to a spouse for injuries not resulting in the worker's death by permitting recovery of damages for loss of society by the wife of a harbor worker injured nonfatally aboard a vessel in state territorial waters.

In *Alvez* the complaint asserted both negligence and unseaworthiness as grounds for recovery by Mr. Alvez, the injured harbor worker. Mrs. Alvez sought to join in the suit brought by her husband to assert her claim for loss of society. The decision by the New York Court of Appeals, affirmed by the United States Supreme Court, held that she should be permitted to do so.

The rationale of *Alvez* does not limit its holding to the precise situation there presented. The Court recognized that the so-called warranty of seaworthiness may be invoked by the spouse of a longshoreman. *American Export Lines, Inc. v. Alvez*, 446 U.S. at 280, 100 S.Ct. at 1677, 64 L.Ed.2d at 290.[13] Because that doctrine of liability without fault was developed by the general maritime law and extends both to crew members and to others who do seaman's work,[14] it also benefits their spouses under the *Alvez* doctrine. Within the single body of judge-formulated maritime law "there is no apparent reason to differentiate between fatal and nonfatal injuries in authorizing the recovery of damages for loss of society." *American Export Lines, Inc. v. Alvez*, 446 U.S. at 281, 100 S.Ct. at 1677, 64 L.Ed.2d at 291. There is no more reason to distinguish between the types of workers whose rights stem from that same integral jurisprudence.

*Alvez* drew no line at the marine league. Recognizing that Congress had not conferred a right to recover for damages for

---

**12.** *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524 (5th Cir. 1979) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927–28, 64 L.Ed.2d 815 (1980) (death of seaman in territorial waters). *See DoCarmo v. F. V. Pilgrim I. Corp.*, 612 F.2d 11 (1st Cir. 1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980) (no recovery for loss of society under the Jones Act where injury resulting in death occurred on the high seas).

**13.** The Court noted that "Alvez's injury was sustained before the effective date of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*" *American Export Lines, Inc. v.*

*Alvez*, 446 U.S. 274, 276 n.2, 100 S.Ct. 1673, 1675 n.2, 64 L.Ed.2d 284, 288 n.2 (1980). Thus, the *Alvez* decision does not consider the effect of the enactment of 33 U.S.C. § 905(b) on the harbor worker's action for unseaworthiness under general maritime law.

**14.** The maritime worker is entitled to the warranty of seaworthiness if "he is doing a seaman's work and incurring a seaman's hazards." *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 99, 66 S.Ct. 872, 880, 90 L.Ed. 1099, 1108 (1946). *See generally* G. Gilmore & C. Black, The Law of Admiralty § 6-54 (2d ed. 1975).

loss of society in the Death on the High Seas Act [DOHSA],[15] 46 U.S.C. § 761, *et seq.*, or in the Jones Act U.S.C. § 688, the court noted that "*neither statute* embodies an 'established and inflexible' rule here foreclosing recognition of a claim for loss of society by *judicially crafted general maritime law.*" *Id.* at 282, 100 S.Ct. at 1678, 64 L.Ed.2d at 291 (emphasis added).

While DOHSA's "preclusive effect" forbids "supplementation of the elements of compensation for which the Act provides," *Id.* at 282, 100 S.Ct. at 1678, 64 L.Ed.2d 284, *citing Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), it does not exclude federal maritime law as a source of relief for either fatal or nonfatal injuries upon territorial waters. DOHSA's preemptive effect must be confined to its scope. Neither does the Jones Act sweep aside general maritime remedies, *American Export Lines, Inc. v. Alvez*, 446 U.S. at 282, 100 S.Ct. at 1678, 64 L.Ed.2d 284. "[T]he liability schemes incorporated in DOHSA and the Jones Act should not be accorded overwhelming analogical weight in formulating remedies under general maritime law." *Id.* at 283, 100 S.Ct. at 1678, 64 L.Ed.2d 284.

We conclude that the general maritime law, a single and unitary body of jurisprudence, extends the same rights to all entitled to recover under it whether the injury occurs in territorial waters or on the high seas and that, accordingly, the spouse of a person entitled to recover for vessel unseaworthiness has a cause of action for loss of society whether the injured person was a member of a vessel crew or was for some other reason entitled to a seaworthy vessel.

The same damages are not recoverable in a claim for negligence under the Jones Act. That statute itself creates an integrated remedial pattern. It establishes

an action at law, not a maritime action. It does not allow damages for loss of spousal society. *Ivy v. Security Barge Lines*, 606 F.2d 524 (5th Cir. 1979) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927–28, 64 L.Ed.2d 815 (1980). Our decision in *Ivy* was distinguished by the Supreme Court in *Alvez*, 446 U.S. at 281, 100 S.Ct. at 1678, 64 L.Ed.2d at 291, and a writ of certiorari in *Ivy* was denied only seven days after *Alvez* was decided. There is only seeming anomaly in the apparent possibility that the spouses of those who are not crew members may, under the general maritime law, have greater rights than do the spouses of the crew under the Jones Act. Insofar as the crew member is entitled to a seaworthy vessel, the maritime court extends to all those exposed to the seas' hazards equal solicitude. The limitations we acknowledge are only those established, expressly or inferentially, by Congress in creating the action at law for negligence.

### III.

We turn to a question previously intimated. In affirming the decision of the New York Court of Appeals, the *Alvez* court held that the spouse of the injured longshoreman was permitted to assert her claim for loss of society by joining in the longshoreman's suit. An issue necessarily raised by the *Alvez* decision is whether the spouse of the injured longshoreman or seaman who fails to join in the physically injured spouse's suit, forfeits the right to bring the claim for loss of consortium. While some of the forty-two states that have recognized a consortium claim, *see American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 284 & n. 11, 100 S.Ct. 1673, 1679 & n. 11, 64 L.Ed.2d 284, 293 & n. 11 (1980) (citing cases from the forty-two states recognizing the consortium claim), require such joinder, a majority do not.[16]

---

**15.** The Death on the High Seas Act [DOHSA], 46 U.S.C. § 761 *et seq.*, limits survivors to recovery of pecuniary losses. 46 U.S.C. § 762. The recovery of pecuniary damages under DOHSA may not be supplemented with the *Gaudet* loss of society remedy founded on general maritime law. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

**16.** *See, e. g., Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974) (joinder not required); *Kotsiris*

The main rationale supporting required joinder is the need to minimize the possibility that double damages would be recovered.[17] Because the procedures we announce below will adequately serve that purpose, we see no reason to require presentation of both claims in a single proceeding.[18]

The injury for which a cause of action was recognized in *Alvez* and *Gaudet* was loss of society. As defined in both cases,

> [t]he term "society" embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection. *Sea-Land Services v. Gaudet*, 414 U.S. 573, 585, 94 S.Ct. 806, 815, 39 L.Ed.2d 9 (1974).

*American Export Lines, Inc. v. Alvez*, 446 U.S. at 275 n.1, 100 S.Ct. at 1674 n.1, 64 L.Ed.2d at 287 n.1. The *Gaudet* court elaborated on the loss of society concept, distinguishing it from other nonpecuniary damages which are not compensable in an action based on a general maritime claim.

> Loss of society must not be confused with mental anguish or grief, which is not compensable under the maritime wrongful-death remedy. The former entails the loss of positive benefits, while the latter represents an emotional response to the wrongful death. The difference between the two is well expressed as follows:
>
> 'When we speak of recovery for the beneficiaries' mental anguish, we are primarily concerned, not with the benefits they have lost, but with the issue of compensating them for their harrowing experience resulting from the death of a loved one. This requires a somewhat negative approach. The fundamental question in this area of damages is what deleterious effect has the death, as such, had upon the claimants? In other areas of damage, we focus on more positive aspects of the injury such as what would the decedent, had he lived, have *contributed* in terms of support, assistance, training, comfort, consortium, etc.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 'The great majority of jurisdictions, including several which do allow damages for other types of nonpecuniary loss, hold that the grief, bereavement, anxiety, distress, or mental pain and suffering of the beneficiaries may not be regarded as elements of damage in a wrongful death action,' [S. Speiser, Recover for Wrongful Death § 3.45, p. 223 (emphasis in original) (footnotes omitted).]

*Sea-Land Services, Inc. v. Gaudet*, 414 U.S. at 585 n.17, 94 S.Ct. at 815 n.17, 39 L.Ed.2d at 21 n.17. Thus, *Gaudet* does not permit recovery generally for non-pecuniary losses or emotional losses, but only for one kind of loss of a non-pecuniary nature, loss of society.

■ The pecuniary elements of damages recoverable in the loss of society action, properly denominated, are also limited. The claimant-spouse may not recover the

---

*v. Ling*, 451 S.W.2d 411 (Ky.1970) (joinder not required, although it is desirable and the practicalities of the case will result in joinder in most cases); *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis.2d 571, 157 N.W.2d 595 (1968). *See generally* Hume Liability to Wife for Loss of Consortium: An Update, 24 Fed'n Ins. Counsel Q. 36, 45 (No. 4, 1974).

**17.** The seaman's presence as a party to the suit is not required to accord the spouse complete relief in her action for loss of society. Although the injured seaman's interests are closely related to the subject matter of the wife's action, particularly on the issue of liability, her recovery will neither impede the seaman's ability to recover in his own action, nor, in light of the limitations on the spousal loss of society

recovery which we hereinafter define, leave the defendant in danger of incurring double liability. Thus, rule 19, Fed.R.Civ.P., does not require the joinder of the injured seaman in the spouse's action seeking recovery for loss of society.

**18.** We note that if the injured seaman's action is not joined with his spouse's action for loss of society, collateral estoppel principles may preclude the relitigation of issues already determined in the earlier action. Because it would be premature for us to attempt to resolve an issue not raised in this case, we do not address the question of the applicability of the doctrine of collateral estoppel to such a situation.

value of home nursing services [19] for that is an element of damages recoverable by the injured spouse.[20] Loss of the services that would have been provided to the marital partnership are also excluded for they are likewise embraced in the physically injured spouse's claim. If, for example, the injured spouse is the husband and he, prior to his injury, furnished such services as household repairs and lawn maintenance, the cost of employing someone else to perform these services after his disability is recoverable in the husband's action.

The court noted in *Gaudet*, that "when a decedent brings his own personal-injury action during his lifetime and recovers damages for his lost wages he acts in a fiduciary capacity to the extent that he represents his dependents' interest in that portion of his prospective earnings which, but for his wrongful death, they had a reasonable expectation of his providing for their support." 414 U.S. at 594, 94 S.Ct. at 819, 39 L.Ed.2d at 26. Thus, loss of support provided by the injured spouse is not recoverable by the claimant spouse in the loss of society action. *See* note 1, *supra*.

█ It necessarily follows that the spousal claim we recognize is not for loss of consortium, as that term is understood at common law, but is limited to the loss of those other positive benefits that would have been rendered by the physically injured spouse, specifically delineated in *Gaudet* and there denominated loss of society. Thus the spouse of a seaman whose injuries are attributable to the unseaworthiness of a vessel has a general maritime law cause of action for loss of his society. We are free neither to take an over-compassionate course and extend to a spouse not physically injured a broad right to recover in every kind of admiralty and maritime related ac-

tion for all kinds of hurt sustained as a result of the disability of the seaman, nor to wheel in the opposite direction and wait for Congress to resolve the issues here presented. Instead, we have followed as carefully as our compass would permit, the buoys set by the Supreme Court since *Moragne*, in 1970, recognizing that, all save *Alvez*, were designed for those who presented death claims and that we here consider the rights of those whose spouse lives. The channel that we find is narrow but it appears to be the only navigable course.

For these reasons, the judgment is REVERSED and the case is remanded for further proceedings consistent with this opinion.

---

19. The spouse of the injured seaman may present the appealing claim that, though previously otherwise gainfully employed, she was required to terminate that employment to provide nursing services to her injured husband. The value of nursing services is recoverable by the injured seaman in his action. Thus, if the spouse decides to quit work to provide needed nursing care, she has simply made an election to provide a service for which the injured spouse has been afforded the ability to pay.

20. *See, e. g., Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974); *Kotsiris v. Ling*, 451 S.W.2d 411 (Ky.1970); *Tribble v. Gregory*, 288 So.2d 13 (Miss.1974).