**Edna Earl BACON & Viola Bacon**

v.

**John H. BUNTING, Jr., trading as Captain Jack Bunting & Son.**

**Civ. A. No. M–81–1876.**

United States District Court, D. Maryland.

March 2, 1982.

Robert P. O'Brien and Niles, Barton & Wilmer, Baltimore, Md., for defendant.

Robert L. Ferguson, Jr., Thomas J. Schetelich and Allen, Thieblot & Alexander, Baltimore, Md., for plaintiffs.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The defendant, John H. Bunting, Jr., trading as Captain Jack Bunting & Son, has moved to dismiss the plaintiffs' amended complaint [1] insofar as it purports to state a claim by Edna Earl Bacon based on the alleged unseaworthiness of the vessel, and by his wife, Viola Bacon, for loss of society. Rule 12(b)(6), Fed.R.Civ.P. The defendant has also moved to strike the plaintiffs' jury demand.[2] Rule 12(f). The plaintiffs have filed a memorandum opposing the defendant's motions,[3] and the court concludes that no hearing is necessary. Local Rule 6(E).

According to the amended complaint, the defendant is the owner and operator of the vessel MISS OCEAN CITY, a commercial fishing boat open to members of the public. The plaintiffs allege that on July 28, 1980, plaintiff Edna Earl Bacon while a paying passenger on the defendant's vessel, was thrown to the deck by the pitching of the vessel in the seas. As a result of this fall, plaintiff Edna Earl Bacon claims to have sustained physical and emotional injury.

Count I of the amended complaint seeks to recover on a theory of negligence. Count II is a companion, loss of society claim to the negligence count. Count III seeks to recover on a theory of unseaworthiness. Count IV is a companion, loss of society claim to Count III.

The Supreme Court first gave formal recognition to the doctrine of unseaworthiness

---

1. Paper No. 5.

2. Paper No. 9.

3. Paper No. 12.

in 1903.[4] In *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), the Court held that "the vessel and her owners are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." 189 U.S. at 175, 23 S.Ct. at 487.

By the middle of the present century the unseaworthiness doctrine was transformed into an absolute, nondelegable duty running from the vessel owner to crewmembers. *E.g., Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 99–104, 64 S.Ct. 455, 457–459, 88 L.Ed. 561 (1944). *See* G. Gilmore & C. Black, *The Law of Admiralty* §§ 6–39 to 6–44(a) (2d ed. 1975).

Over the years, the Court has extended beyond actual crewmembers the class of persons to which the warranty of seaworthiness will run. *See, e.g., Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 214–15, 83 S.Ct. 1185, 1190–91, 10 L.Ed.2d 297 (1963) (longshoremen unloading the vessel from the dock); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 412–14, 74 S.Ct. 202, 206–07, 98 L.Ed. 143 (1953) (carpenter of independent contractor working on board the vessel); *Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85, 99, 66 S.Ct. 872, 879, 90 L.Ed. 1099 (1946) (stevedore on the vessel loading cargo). Nevertheless, the Court has declined to extend the benefits of the doctrine to those persons whom the Court did not view as "doing a seaman's work." *See, e.g., West v. United States*, 361 U.S. 118, 120–22, 80 S.Ct. 189, 191–92, 4 L.Ed.2d 161 (1959) (shore-based employee of contractor which was overhauling vessel that was out of service); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 629, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959) (person visiting a seaman on the vessel); *United New York & New Jersey Pilots Ass'n v. Halecki*, 358 U.S. 613, 616–18, 79 S.Ct. 517, 518–19, 3 L.Ed.2d 541 (1959) (employees of

landbased subcontractor hired to clean vessel's engines).

■ The Supreme Court has not squarely addressed the issue of whether the unseaworthiness doctrine would or should extend to a farepaying passenger. *See* M. Norris, *Law of Maritime Personal Injuries* § 54 (3d ed. 1975). Nevertheless, the lower federal courts have consistently declined to so extend the doctrine. *See, e.g., Garrett v. United States Lines, Inc.*, 574 F.2d 997, 1000 (9th Cir. 1978); *Gele v. Chevron Oil Co.*, 574 F.2d 243, 248 (5th Cir. 1978); *Isham v. Pacific Far East Line, Inc.*, 476 F.2d 835, 836 (9th Cir. 1973); *Armour v. Gradler*, 448 F.Supp. 741, 744–45 (E.D.Pa.1978); *Complaint of Compagnie Generale Transatlantique*, 392 F.Supp. 973, 975–76 & n.8 (D.P.R. 1975); *Noel v. United Aircraft Corp.*, 204 F.Supp. 929, 934–35 (D.Del.1962); *Talton v. United States Lines Co.*, 203 F.Supp. 17, 19 (S.D.N.Y.1962). *But see Lineham v. United States Lines, Inc.*, 417 F.Supp. 678, 689 (D.Del.1976) (dicta).

Thus, while the court is mindful of "the curious anomaly that a bag of coffee beans fares better than a non-crew member fare paying passenger to whom the warranty of seaworthiness does not run," *Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir. 1977); *see Gibboney v. Wright*, 517 F.2d 1054, 1059 (5th Cir. 1975), the court holds that the warranty does not, under the general maritime law, run to a fare paying passenger of a vessel. Consequently, Counts III and IV will be dismissed and the plaintiffs will be left to their negligence theory. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. at 629–30, 79 S.Ct. at 409–10; *Byrd v. Byrd*, 657 F.2d 615, 618 (4th Cir. 1981).

■ The defendant next contends that because the plaintiffs have alleged claims cognizable under the general maritime law they have no right to have such claims tried to a jury.

---

**4.** The lower federal courts had applied variations of the unseaworthiness doctrine even prior to the nineteenth century. *See The Arizona*

*v. Anelich*, 298 U.S. 110, 121 n.2, 56 S.Ct. 707, 710 n.2, 80 L.Ed. 1075 (1936).

It appears that the defendant has confused the source of law to be applied in a case such as this with the court's subject matter jurisdiction and rights attendant thereto.

There is no question that if the plaintiffs had elected to invoke the court's admiralty jurisdiction, pursuant to Rule 9(h), Fed.R. Civ.P., they would not have had a right to have their claims tried to a jury. Rule 38(e). In this case, however, the plaintiffs have alleged jurisdiction under 28 U.S.C. § 1332 which, through the savings-to-suitors clause, 28 U.S.C. § 1333, permits an action "at law" rather than in admiralty as to claims based on the general maritime law.[5] See, e.g., Kermarec v. Compagnie Generale Transatlantique, 358 U.S. at 628, 79 S.Ct. at 408; Romero v. Bethlehem Steel Corp., 515 F.2d 1249, 1252–54 (5th Cir. 1975); G. Gilmore & C. Black, The Law of Admiralty § 1–13 (2d ed. 1975); 2A Moore's Federal Practice ¶ 9.09 (2d ed. 1981); 5 Moore's Federal Practice ¶ 38.35[1] (2d ed. 1981); 5 C. Wright & A. Miller, Federal Practice & Procedure §§ 1313, 1314 (1969). Consequently, the defendant's motion to strike the plaintiffs' jury demand will be denied.

■ The defendant's final contention concerns Count II, the loss of society claim asserted by plaintiff Viola Bacon. According to the defendant, the rationale of American Export Lines, Inc. v. Alvez, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980), is inapplicable to Mrs. Bacon's loss of society claim because Mr. Bacon's claim is premised on negligence rather than unseaworthiness. The plaintiffs contend, and the court agrees, that the defendant has taken an overly parsimonious view of Alvez,[6] and its analytical predecessor Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1973).

In Gaudet, the Court held that in connection with the nonstatutory maritime wrongful death action established by Moragne v. States Marine Lines, Inc.,[7] 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the widow of a longshoreman fatally injured in a maritime accident could recover for the loss of her deceased husband's society. In Alvez, the court extended the availability of such a recovery to a situation where a harborworker was injured nonfatally aboard a vessel in the territorial waters.

In Alvez, Justice Brennan expressly declined to follow Judge Friendly's thoughtful opinion in Igneri v. Cie. de Transports Oceaniques, 323 F.2d 257 (2d Cir. 1963), cert. denied, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964),[8] which is relied on by the defendant in opposing Mrs. Bacon's loss of society claims. While recognizing, as did Judge Friendly, that there was no clear decisional law regarding recovery for loss of society in a maritime case when Igneri was decided, 446 U.S. at 280, 100 S.Ct. at 1677, Justice Brennan noted that Moragne and Gaudet constituted significant extensions of the general maritime law. 446 U.S. at 280–82, 100 S.Ct. at 1677–1678. In addition, Justice Brennan rejected the argument that damages for loss of society should not be allowed under the general maritime law simply because they are not available in suits under either the Death on the High Seas Act, 46 U.S.C. § 762, or the Jones Act, 46 U.S.C. § 688. 446 U.S. at 282–84, 100 S.Ct. at 1678–79.

---

**5.** Amended Complaint, Paper No. 5 at ¶ 1.

**6.** Justice Brennan's opinion in Alvez was joined by Justices White, Blackmun and Stevens. The Chief Justice and Justice Powell concurred in the judgment. 446 U.S. at 286, 100 S.Ct. at 1680. The dissenting opinion, written by Justice Marshall and joined by Justices Stewart and Rehnquist, 446 U.S. at 286–90, 100 S.Ct. at 1680–82, relates only to whether the underlying decision of the Court of Appeals of New York was final. 28 U.S.C. § 1257.

**7.** Moragne overruled The Harrisburg, 119 U.S. 199, 213–14, 7 S.Ct. 140, 146–47, 30 L.Ed. 358 (1886), which held that in the absence of a statute, the general maritime law did not recognize an action for wrongful death.

**8.** Igneri was followed by the Fifth Circuit in Christofferson v. Halliburton Co., 534 F.2d 1147 (5th Cir.), rehearing en banc denied, 542 F.2d 1174 (5th Cir. 1970). Recently, the Fifth Circuit overruled Christofferson on this point in light of Alvez. Cruz v. Hendy International Co., 638 F.2d 719 (5th Cir. 1981).

The defendant contends that *Alvez* is limited to cases in which damages for loss of society are sought in connection with a claim of unseaworthiness. The court disagrees.

In *Alvez*, the injured harborworker sued under both theories in negligence and unseaworthiness.[9] In concluding that damages for loss of society were recoverable in connection with nonfatal injuries under the general maritime law, Justice Brennan neither expressly nor by fair implication limited such recovery to cases premised only on unseaworthiness.

Judge Newman, writing for the Second Circuit in *Doca v. Marina Mercante Nicaraguense*, 634 F.2d 30, 34 & n.2 (2d Cir. 1980), recognized this point and affirmed a loss of consortium award to the wife of a longshoreman who had prevailed on a negligence theory. Similarly, in *Cruz v. Heady International Co.*, 638 F.2d 719 (5th Cir. 1981), the Fifth Circuit recognized that the "rationale of *Alvez* does not limit its holding to the precise situation there presented." 638 F.2d at 724. In *Cruz*, the court held that a seaman's wife could recover for loss of society where her husband, as a seaman, could recover damages under an unseaworthiness theory. 638 F.2d at 725.

Although the court has discovered no case involving a loss of society claim by the spouse of a passenger, the reasoning applied in *Alvez*, and the interpretation of that case by two courts of appeals suggests that the general maritime law recognizes a loss of society claim whenever the injured spouse has a maritime claim under either a negligence or an unseaworthiness theory. Consequently, the court concludes that Count II of the amended complaint states a claim for which relief can be granted.

For the reasons set out above, it is this 2nd day of March, 1982, ORDERED:

1. The defendant's motion to dismiss the plaintiffs' amended complaint is GRANTED as to Counts III and IV, and DENIED as to Count II.

2. The defendant's motion to strike the plaintiffs' jury demand is DENIED.

---

**9.** The accident in *Alvez* occurred prior to the 1972 amendments to the Longshoremen's & Harbor Worker's Compensation Act, 33 U.S.C. § 905(b), which eliminated liability to longshoremen based on unseaworthiness.