John **CAROLLO** and Frances **Carollo, Plaintiffs,**

v.

**GLOBAL CAPE ANN CORP., Defendant.**

Civ. A. No. 83–3261–W.

United States District Court, D. Massachusetts.

Feb. 12, 1986.

Michael B. Latti, Latti Associates, Boston, Mass., for plaintiffs.

Thomas E. Clinton, Clinton & Muzyka, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiffs, John and Frances Carollo, have brought this seaman's action against defendant, Global Cape Ann Corp., seeking compensation for injuries that John Carollo allegedly sustained while employed as a crewman on the F/V Global Cape Ann. These injuries allegedly occurred while the ship was traveling on the high seas, that is, more than three miles or a marine league from the shore. Count I of plaintiffs' amended complaint asserts a claim for negligence under the Jones Act, 46 U.S.C. § 688. Count II alleges a claim for unseaworthiness under general maritime law. Count III raises a claim for maintenance and cure, also under general maritime law. Finally, in Count IV Frances Carollo has raised a claim for loss of her husband's services, society, affection, companionship, relationship, and consortium.

On October 4, 1985, defendant moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Count IV for failure to state a claim. It argued that neither the Jones Act nor general maritime law provides the spouse of a seaman injured on the high seas with a remedy for loss of consortium or society.[1] As this motion was unopposed, the court granted it on November 11, 1985.

On November 21, 1985, plaintiffs moved pursuant to Fed.R.Civ.P. 60(b) to vacate the court's dismissal of Count IV on the grounds that they did not receive a copy of defendant's motion or supporting memorandum, and that dismissal is inappropriate on the merits because general maritime law provides the wife of a seaman injured on the high seas with a remedy for loss of society or consortium.

Because the court's initial decision resulted from the mistaken impression that plaintiffs conceded the merits of the motion to dismiss and because the court finds that as a matter of law Frances Carollo could recover for loss of society and consortium in this case, the court has decided to vacate the dismissal of Count IV.

### I. *Relief from Judgment*

■ Defendant does not dispute plaintiffs' representation that they did not receive defendant's motion or supporting memorandum. Fed.R.Civ.P. 60(b) provides that the court may relieve a party from a final judgment or order where that judgment was based on "(1) mistake, inadvertance, surprise, or excusable neglect; ... or (6) any other reason justifying relief from operation of the judgment."

The motion to dismiss was granted by the court in the mistaken belief that plaintiffs received notice of it and conceded its merit. It is now apparent that it would be unfair and inappropriate to fail to vacate the dismissal of Count IV because plaintiffs did not receive notice of the motion until after it had been decided. Therefore, the dismissal of Count IV of the plaintiffs

---

1. The parties use the words society and consortium interchangeably. While the terms are similar, they are not identical. Consortium includes society as well as other elements of damage. *Cruz v. Hendy Int'l Co.*, 638 F.2d 719, 722

(5th Cir.1981). Section II of this opinion addresses whether plaintiffs have stated a valid claim for loss of society. Section III addresses whether they have also stated a claim for the related forms of relief, including consortium.

must be vacated·pursuant to Fed.R.Civ.P. 60(b)(1) and (6).

## II. *Claim for Loss of Society*

■ Defendant argues that neither the Jones Act nor general maritime law provides the spouse of a seaman injured on the high seas with a remedy for loss of society. Plaintiff does not dispute, and the court agrees, that the Jones Act does not provide a remedy for loss of society, whether the seaman's injuries occurred on the high seas or within territorial waters. *See American Export Lines v. Alvez*, 446 U.S. 274, 281, 100 S.Ct. 1673, 1677, 64 L.Ed.2d 284 (1980); *Cruz v. Hendy Int'l Co.*, 638 F.2d 719, 723 (5th Cir.1981); *Do Carmo v. F.V. Pilgrim I. Corp.*, 612 F.2d 11, 13 (1st Cir.1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980); *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524 (5th Cir.1979) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). At issue here is whether Mrs. Carollo has a remedy for loss of society under general martime law.

Defendant relies heavily on *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257 (2d Cir.1963), *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964), in which the Court of Appeals for the Second Circuit held that an injured longshoreman's wife was not entitled to recover for loss of her husband's society under the Jones Act or general maritime law. The law, however, has evolved considerably since *Igneri* was decided in 1963. Indeed, *Igneri* was substantially overruled by the Supreme Court in *Alvez*.

In 1970, the Supreme Court, addressing a gap left by the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 762–67,[2] ruled that general maritime law provides a cause of action for the wrongful death of seaman killed in territorial waters. *Moragne v. State Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (overruling *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886)). Before *Moragne*, a seaman's dependents could bring a wrongful death action under DOHSA, but

only if the seaman had died more than a marine league from land.

In the course of deciding *Moragne*, the Court affirmed two well-established principles of maritime law that are relevant to this case. First, admiralty canons have always "included a special solicitude for the welfare of those men who undertook to venture upon hazardous and unpredictable sea voyages." 398 U.S. at 387, 90 S.Ct. at 1780. Second:

> "[C]ertainly it better becomes the humane and liberal character of proceedings in admirality to give than to withhold the remedy, when not required to withhold it by established and inflexible rules."

*Id.* (quoting *The Sea Gull*, 21 F.Cas. 909 (12,578) (C.C.Md.1865)).

In 1974, the Supreme Court, relying heavily on *Moragne*, held that the spouse of a seaman killed in territorial waters has a remedy for loss of society under general maritime law, despite the fact that neither DOHSA nor the Jones Act provided such a remedy, and despite the fact that the seaman brought a successful action for his injuries before he died. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, *reh'g denied*, 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974). The Court noted that it was attempting to act consistently with its decision in *Moragne* to extend the "special solicitude" for seamen to "the dependents of the seafaring decedent." 414 U.S. at 577, 94 S.Ct. at 811.

Several years later, the Supreme Court held that DOHSA precludes a decedent's survivor's claims for nonpecuniary losses, including loss of society, when a seaman is *killed* on the high seas. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). In reaching this conclusion, the Court relied on the explicit language of the statute, which provides:

> The recovery [in a seaman's action] shall be a fair and just compensation for the *pecuniary* loss sustained by the person for whose benefit the suit is brought. . . .

---

**2.** DOHSA provides a wrongful death cause of action for dependents of seamen who are killed

on the high seas. 46 U.S.C. § 761 et seq.

46 U.S.C. § 762 (emphasis added); *Higginbotham*, 436 U.S. at 620, 98 S.Ct. at 2012. Based on this provision, the Supreme Court decided that:

> Congress did not limit DOHSA beneficiaries to recovery of their pecuniary remedies in order to encourage the creation of nonpecuniary supplements.... There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries.

436 U.S. at 625, 98 S.Ct. at 2015 (citations omitted).

The Supreme Court reconciled *Higginbotham* with *Gaudet* by limiting the application of *Gaudet* to deaths occurring in coastal waters. That is, a seaman's spouse may only recover for loss of society in a wrongful death action if her husband was fatally injured while traveling on territorial waters. *Id.* at 623, 98 S.Ct. at 2014. The Court recognized that its ruling created an anomaly in the sense that the spouse of a seaman killed 2.9 miles from shore as a result of the vessel's unseaworthiness would be able to recover for loss of her husband's society, pursuant to *Gaudet,* but the spouse of a seaman killed under identical circumstances while the ship was 3.1 miles from shore would have no claim for loss of society, under *Higginbotham.* The Court held that "even if this difference proves significant, a desire for uniformity cannot override the statute." *Higginbotham*, 436 U.S. at 624, 98 S.Ct. at 2014.

Two years later, the Supreme Court decided that a seaman's spouse has a claim for loss of society under general maritime law where her husband is injured, but not killed, while working on territorial waters. *Alvez*, 446 U.S. at 281, 100 S.Ct. at 1677. In doing so, the Supreme Court substantially limited the potential impact of the *Higginbotham* decision by holding that the preclusive effects of DOHSA must be confined to the scope of the act. It said:

> DOHSA comprehends relief from *fatal* injuries incurred on the *high seas,* 46 U.S.C. § 761. To be sure, *Mobil Oil Corp. v. Higginbotham, supra,* construed DOHSA to forbid general maritime law supplementation of the elements of compensation for which the Act provides. But *Higginbotham* never intimated that the preclusive effect of DOHSA extends beyond the statute's ambit. To the contrary, while treating the statutory remedies for the wrongful deaths on the high seas as exclusive, *Higginbotham* expressly reaffirmed that *Gaudet* governs recoveries for wrongful deaths on territorial waters. 436 U.S., at 623–25 [98 S.Ct. at 2013–15]; see *Moragne, supra* [398 U.S.] at 397–98 [90 S.Ct. at 1785–86]. And if DOHSA does not preempt general maritime law where *fatalities* occur *within* territorial waters, it follows *a fortiori* that the Act does not exclude federal maritime law as a source of relief for *nonfatal* injuries upon the same waters.

*Alvez*, 446 U.S. at 282, 100 S.Ct. at 1678 (emphasis in original).

■ The Court also decided that the Jones Act does not sweep aside general maritime law remedies, stating that "the Jones Act does not exhaustively or exclusively regulate longshoreman's remedies.... Furthermore, the Jones Act lacks such preclusive effect even with respect to true seamen...." *Id.* at 282–83, 100 S.Ct. 1678.[3] In making this latter finding, the

---

**3.** The Jones Act reads as follows:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the

Supreme Court did not distinguish between Jones Act injuries occurring on territorial waters and those occurring the high seas, although the seaman in *Alvez* was injured on territorial waters. *See Cruz*, 638 F.2d at 724–25 ("*Alvez* drew no line at the marine league"). In fact, in *Gaudet*, the Supreme Court said "[t]he Jones Act ... established [a wrongful-death] action based on negligence for the wrongful death of a seaman *regardless of the situs of the wrong*." 414 U.S. at 576, 94 S.Ct. 806, 39 L.Ed.2d 9 (emphasis added).

In *Alvez*, Supreme Court concluded that because neither DOHSA nor the Jones Act forbid compensation for loss of society in cases involving nonfatal injuries in territorial waters, and because "a clear majority of states permit a wife to recover damages for loss of consortium from personal injury to her husband," 446 U.S. at 284, 100 S.Ct. at 1679, Mrs. Alvez could properly maintain a claim for loss of society caused by her husband's nonfatal injuries sustained in territorial waters.

■ In view of this line of cases, particularly *Alvez*, the court concludes that Mrs. Carollo should be allowed to maintain a claim for loss of her husband's society resulting from nonfatal injuries that he allegedly sustained while the F/V Global Cape Ann was traveling on the high seas. The court is persuaded that just as the Jones Act does not preclude recovery for loss of society in cases involving nonfatal injuries sustained in territorial waters, it does not preclude such recovery in cases in which nonfatal injuries are sustained on the high seas. Nor does DOHSA preclude recovery for loss of society in cases in which a seaman receives a nonfatal injury on the high seas. The preclusive effect of DOHSA does not extend "beyond the statute's ambit...." *Alvez*, 446 U.S. at 282, 100

S.Ct. at 1678. Rather Congress explicitly restricted the scope of DOHSA to wrongful death actions, as opposed to personal injury actions. *Alvez*, 446 U.S. at 282, 100 S.Ct. at 1678. In doing so, " '[N]o intention appears that the [Death on the High Seas] Act have the effect of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law.' " *Alvez*, 446 U.S. at 284, 100 S.Ct. at 1679 (quoting *Moragne*, 398 U.S. at 400, 1787; citing *Gaudet*, 414 U.S. at 588 n. 22, 94 S.Ct. at 816 n. 22).

By its terms, DOHSA does not apply to cases involving nonfatal injuries. The Supreme Court said in *Alvez*:

> [I]t is a settled canon of maritime jurisprudence that " 'it better becomes the humane and liberal character of proceedings in admiralty to give than withhold the remedy, when not required to withhold it by established and inflexible rules.' " *Moragne v. State Marine Lines, supra* [398 U.S.] at 387 [90 S.Ct. at 1781] ... accord, *Sea-Land Services, Inc. v. Gaudet, supra,* [414 U.S.] at 583 [94 S.Ct. at 814]. Plainly, neither statute embodies an "established and inflexible" rule here foreclosing recognition of a claim for loss of society by judicially crafted general maritime law.

446 U.S. at 281–82, 100 S.Ct. at 1677–78. This conclusion is equally applicable in this case.

In reaching this result, the court concurs with the Court of Appeals for the Fifth Circuit's decision in *Cruz*. There Judge Rubin concluded that:

> [T]he general maritime law, a single and unitary body of jurisprudence, extends the same rights to all entitled to recover under it *whether the injury occurs in*

district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. § 688. DOHSA and the Jones Act provide alternative remedies for the spouse of a seaman whose death on the high seas is caused by the negligence of a shipowner. *In Re Dearborn Marine Service, Inc.,* 499 F.2d 263, 270 (5th Cir.1974), *reh'g denied,* 512 F.2d 1061 (5th Cir.) *cert. dismissed sub nom. Monk v. Chambers &*

*Kennedy,* 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 1118 (1975). But unlike DOHSA, the Jones Act does not limit recovery to pecuniary losses. Rather, it allows recovery for "damages at law." While it is well-settled that the Jones Act does not explictly provide spouses with a remedy for loss of society, it also does not expressly preclude such remedies under general maritime law. *Alvez,* 446 U.S. at 282–83, 100 S.Ct. at 1678.

*territorial waters or on the high seas* and that, accordingly, the spouse of a person entitled to recover for vessel unseaworthiness has a cause of action for loss of society whether the injured person was a member of a vessel crew or was for some other reason entitled to a seaworthy vessel.

638 F.2d at 725.[4]

The court recognizes that neither the Supreme Court in *Alvez,* nor the Fifth Circuit in *Cruz,* addressed a case involving nonfatal injuries to a seaman on the high seas. Nor has the court found any reported opinion addressing this issue directly. In this sense, the issue is one of first impression.

The court also recognizes that this decision, while averting one anomaly, results in another. The necessary result of this decision is that the wife of a seaman who is *injured* on the high seas will be able to recover for the loss of her husband's society, while the wife of a seaman *killed* on the high seas will not. To decide otherwise, however, would result in an equal anomaly because the spouse of a seaman injured in *territorial* waters would have a general maritime law claim for loss of society, but the spouse of a seaman injured on the *high seas* would not.

Despite the recognized anomaly between the remedies available for injury and death on the high seas, the court's conclusion follows from the clear direction of Supreme Court cases in this area. *See Alvez; Higginbotham; Gaudet; Moragne.* The court believes that sitting in admiralty, it must afford a "special solicitude for the welfare of those men who under[take] to venture upon the hazardous and unpredictable sea voyages." *Alvez,* 446 U.S. at 285, 100 S.Ct. at 1679–80 (quoting *Moragne,* 398 U.S. at 387, 90 S.Ct. at 1780). This "special solicitude" is equally applicable " 'to the dependents of [seafarers].' " *Alvez,* 446 U.S. at 286, 100 S.Ct. at 1680

(quoting *Gaudet,* 414 U.S. at 577, 94 S.Ct. at 811). Where not required by statute to withhold a remedy, the court is counseled by "settled canon[s] of admiralty jurisprudence," to grant the remedy. *Alvez,* 446 U.S. at 281, 100 S.Ct. at 1677.

Thus, the court holds that Mrs. Carollo may maintain a claim for loss of society under Count IV of plaintiffs' complaint.

### III. *Elements of Count IV*

In Count IV, Mrs. Carollo seeks recovery for loss of her husband's services, society, affection, companionship, relationship, and consortium. The only issue remaining to be decided is which elements of Count IV, in addition to loss of society, may be maintained.

■ The dispute over Count IV has centered on Mrs. Carollo's right to recover for loss of "society or consortium." The parties have used these terms interchangeably although they are not identical. *Cruz,* 638 F.2d at 722. In *Gaudet,* the Supreme Court held that:

The term 'society' embraces a broad range of mutual benefits each family member receives from others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.

414 U.S. at 585, 94 S.Ct. at 815. Loss of society does not include, and a spouse may not recover for, mental anguish or grief suffered as a result of a seaman's injury. *Id.* at 585–86 n. 17, 94 S.Ct. at 815 n. 17. Mrs. Carollo does not seek such relief.

■ Consortium is slightly broader than society. It includes loss of pecuniary services as well as "such non-pecuniary components as love, companionship, affection, society, sexual relations, comfort and solace, all summed up in *Gaudet* as 'loss of society.' " *Cruz,* 638 F.2d at 722. It is well-settled and undisputed that Mrs. Car-

---

**4.** The fact that 41 out of 50 states, as well as the District of Columbia, allow a wife to recover for loss of consortium or society from personal injury to her husband further supports this decision. *Alvez,* 446 U.S. at 284 n. 11, 100 S.Ct. at 1679 n. 11. "Apart from the question of statutory preemption, the liability schemes incorpo-

rated in DOHSA and the Jones Act should not be accorded overwhelming analogical weight in formulating remedies under general maritime law.... Far more persuasive at the present juncture are currently prevailing views about compensation for loss of society." *Alvez,* 446 U.S. at 283–84, 100 S.Ct. at 1678–79.

ollo may recover for the loss of services provided by her husband, including services performed around the home, or in the nuturing, training, and guidance of the seaman's children. *Gaudet,* 414 U.S. at 585, 94 S.Ct. at 815. Thus, since Mrs. Carollo may state a claim for loss of society and loss of services, she may also state a claim for loss of consortium.

The court, therefore, finds that Count IV properly, although redundantly, states a claim for loss of John Carollo's services, society, affection, companionship, relationship, and consortium.[5]

### IV.  *Conclusion*

Upon reconsideration, the court finds that Mrs. Carollo is entitled under general maritime law to maintain a claim for loss of her husband's society and consortium resulting from injuries he allegedly sustained while the F/V Global Cape Ann was traveling on the high seas. The court's earlier decision to dismiss Count IV of plaintiffs' complaint is hereby VACATED pursuant to Fed.R.Civ.P. 60(b), and defendant's motion to dismiss Count IV is hereby DENIED.

---

5.  Of course, Frances Carollo may not recover for any damages for which John Carollo has received or will receive compensation. *Gaudet,* 414 U.S. at 592, 94 S.Ct. at 818. Such an overlap is most likely to occur between a husband's claim for loss of future wages and a wife's claim for loss of future support. However, since Mrs. Carollo is not seeking compensation for loss of future support, the danger of double recovery is minimal and perhaps nonexistent in this case.