Julia Marie **HARRIS**, Appellant,

v.

Steven J. **WESTFALL**, Appellee.

No. S–10819.

Supreme Court of Alaska.

April 30, 2004.

---

**11.** *See* Op. at 162–163.

**12.** 929 F.2d 990, 994 (4th Cir.1991).

Robin A. Taylor, Law Office of Robin A. Taylor, Anchorage, for Appellant.

No appearance by or for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Was it an abuse of discretion to deny Julia Harris's Alaska Civil Rule 60(b) motion to set aside a child support order that awarded child support against her? Unrebutted facts described in Harris's supporting affidavit and her attorney's memorandum established that (1) the child support order proposed by the other parent and adopted by the court contained material misrepresentations, and (2) Harris inadvertently failed to realize that her meritorious objections to the proposed child support order had not been filed. We therefore vacate the child support order and remand.

## II. FACTS AND PROCEEDINGS

Julia Marie Harris and Steven J. Westfall are the parents of Cayla Marie Westfall, born in October 1993. Harris and Westfall never married. Their relationship deteriorated and in 2000 Westfall filed a complaint seeking custody of Cayla. Harris counterclaimed for custody. Each party was represented by counsel.

The parties and their attorneys attended a settlement conference on May 22, 2001, and reached agreement on custody and visitation issues. Superior Court Judge Peter A. Michalski conducted the conference; in the presence of the parties and their attorneys he placed the terms of the settlement on the record. Westfall's attorney prepared a written order corresponding to the terms orally agreed upon at the conference. The court entered the written order approving the settlement agreement on June 7, 2001. The June 7 order contained a specific custody and visitation schedule. It stated, among other things, that "Steven Westfall will have primary physical custody of Cayla from the Sunday of the last full week before school starts until the day after school is let out for the school year." Harris was to have custody over the summer. The order specified a liberal visitation schedule.

The order also stated that "[a]ny child support issues will be handled under Alaska R. Civ. P. 90.3. The Court will make findings concerning the waiver of child support." This term of the order corresponded to the discussion at the conference, where the court stated, "The court will make findings prepared by parties relating to the waiver as to child support. That was what I understood to be part of the agreement in this case."

On December 12, 2001, about six months after entry of the June 7 order approving the settlement agreement, Westfall's attorney filed a proposed child support order that stated that Cayla "shall reside primarily" with Westfall, that Harris "shall have physical custody less than 30% of the year," and that Harris "shall pay child support" of $189.75 per month. This proposed order was not supported with any showing of changed circumstances since entry of the June 7 order.

Through her attorney, Harris attempted to object to the proposed child support order. Her written objections dated December 17, 2001 stated that the parties had "stipulated in court to entry of an order for no child support, based upon the disability of [Harris] and the shared custody arrangement." Her objections also noted that "[e]ven if there were to be child support, the plaintiff and defendant have shared custody...." Her objections further stated that Westfall had never filed a child support guidelines affidavit or provided his payroll stubs, and that consequently a joint calculation could not be performed. Her objections further noted that based on the available financial information and because the parties shared custody, Westfall, and not Harris, would have to pay child support, and that his obligation would be about $275 per month.

On December 27, about ten days after Harris's attorney prepared these objections, the court entered, without changes, the child

support order proposed by Westfall on December 12, 2001. The order thus stated that Westfall had primary physical custody of the child for support purposes and that Harris had physical custody less than thirty percent of the year; it required her to pay monthly child support of $189.75. The court apparently assumed the proposed order was unopposed. The court's file, as of December 27, did not contain Harris's December 17 objections.

On May 31, 2002, Harris, through counsel, filed an Alaska Civil Rule 60(b) motion to set aside the December 27, 2001 child support order. The motion papers, supported by Harris's affidavit and the factual representations made in her attorney's memorandum, stated that in December 2001 and January 2002 Harris's attorney "had a secretary who was sabotaging the office and numerous cases." The supporting memorandum asserted that a copy of Harris's December 17, 2001 objections to Westfall's proposed child support order was attached. Because it appeared that her December 17 objections had never been filed, Harris asked the court to consider those objections and to set aside the child support order. Her Rule 60(b) motion papers argued that Westfall "[a]stoundingly" had submitted the proposed child support order that (1) required Harris to pay child support and (2) stated "that [Westfall] has sole custody of the child."[1] The motion papers further noted that Westfall had resisted a shared custody arrangement because, as a result of Harris's physical disability, Westfall would have been required to pay child support. The Rule 60(b) motion papers stated that the parties had consequently agreed to waive child support.

Harris's motion papers also asserted that counsel's secretary had hidden the signed child support order from Harris's attorney; that the Child Support Enforcement Division eventually began enforcing the child support order against Harris; that Harris then contacted her attorney, who contacted Westfall's counsel; and that the parties' attorneys then exchanged letters. Harris attached the letters to her motion. We set them out in footnote.[2]

---

1. Actually, the order Westfall proposed in December 2001 did not state that Westfall had "sole custody" of Cayla. It stated instead that he had primary physical custody of the child and that Harris had custody of the child less than thirty percent of the year.

2. Harris's attorney's letter of March 28, 2002 to Westfall's attorney stated:

Robert Erwin

. . . .

Re: child support error

Dear Mr. Erwin,

I am writing regarding an error in the child support order in this matter. As you may recall, your client was concerned that he would have a child support obligation because he was agreeing to my client having so much time with the child, and his income was so much higher than hers. My client agreed to waive all child support in order to get the visitation. We discussed this at length with Judge Michalski and he agreed that, given my client's low income (due to disability) and the fact that both parties could meet the child's needs, it would be fair to waive the rule, and thus, there would be no child support. We put that agreement on the record. I have reviewed the tape of the proceedings in which Judge Michalski specifically states child support will be waived based on specific findings to be drafted. You offered to draft the paperwork, and did so. You drafted the Findings in June, 2001, and the Child Support Order in December, 2001.

Subsequently, your office filed a child support order requiring my client to pay child support, disregarding the waiver, disregarding joint custody, and disregarding the fact that her income is below the poverty line. We filed objections pointing all that out.

Unfortunately, during that period, I had a secretary who was sabotaging my practice and my clients. I have only just discovered the extent of her actions, and her employment was terminated.... This is one of those cases. I reviewed this file at court Wednesday and discovered that she never filed my objections, and the judge signed your proposed order, believing it to be non-opposed. When the order came to my office, the secretary apparently destroyed it so I would not know what she had done....

I give you this detailed explanation so that you will know that I am not trying to foist blame for this on you. I accept responsibility that the objections were not filed.

I choose to assume that your office's error in drafting the order was perhaps due to the passage of time, or delegation of this matter to an employee who had no personal knowledge of the waiver agreement. I am concerned because my client has spoken to yours and she states that they agreed he would talk to you about correcting this. However, he then told her he had spoken with you and would not be correcting it on your instruction. I choose to

Westfall opposed Harris's Rule 60(b) motion on several grounds. His opposition memorandum argued that the delay in requesting relief after Harris discovered "the problem" in early February made her motion untimely, although his opposition did not dispute the assertions of Harris's attorney that she had attempted to file timely objections to the proposed order, and that her secretary had failed to do so and then concealed the order as entered. In response to Harris's contention that the child support order was "completely contrary to the order issued by the court," Westfall's opposition contended that his lawyer was "unaware of any other order pertaining to child support issued by the court." The opposition also asserted that Westfall's attorney had prepared the order "at the request of Judge Michalski's chambers after Ms. Taylor's office failed to file it for some 5 plus months." It also contended that it was Westfall who had agreed "to waive back child support" owed to him by Harris, and that the parties could not waive all future child support, as Harris's motion contended they had, at the settlement conference. The opposition also disputed Harris's contention that Westfall had incorrectly taken the position that he "has sole physical custody of the child." In this regard, it argued:

> assume that this is some miscommunication/misunderstanding between our clients....
> The fact remains, however, that the order your office filed is in error and does not accurately reflect the parties' agreement or the court's order. I have drafted a stipulation to correct this, and hope we can resolve this without resort to litigation. Please let me know if you have any objections.
> Thank you for your prompt attention to this matter.
> Very truly yours,
> Robin A. Taylor

Westfall's attorney's letter of March 29, 2002 to Harris's attorney stated:

> Robin Taylor
> ....
> Dear Ms. Taylor:
> I have been asked by Bob to respond to your message left with our secretary yesterday afternoon. I have enclosed both the Order on Settlement Agreement and the log notes from the Settlement Conference, held on May 22, 2001. Please direct your attention to paragraph 10 of the Order on Settlement Agreement. It states that child support will be determined by Civil Rule 90.3 and that Judge Michalski would make a finding as to the waiv-

Mr. Westfall directs this court's attention to Exhibit C, p. 1 attached to Defendant's motion. Paragraph 2 states "Steven Westfall shall have primary physical custody of Cayla ...". Again, this paragraph was reviewed in great detail at the hearing on settlement and Ms. Harris did not object to it. It makes no sense to argue that Mr. Westfall only has primary physical custody during the school year. He has physical custody of Cayla during the school year and 2 weeks in the summer. He has primary custody of her all year.

It also contended that "[u]nder the rule," overnight visitation that began on Friday and ended at 2:30 p.m. on Sunday "would still be counted as only one overnight visit."

Finally, the opposition took issue with Harris's assertion that the support order had been issued "due to misrepresentation by an adverse party." The opposition stated that "undersigned counsel takes serious offense to that statement and asks the court to address it. This allegation is both unprofessional and unsupported in any way and should be stricken by the court...." The opposition requested an award of attorney's fees under Alaska Rule of Civil Procedure 11, asserted that his attorney had spent 3.2 hours addressing the

> er of child support. The log notes show that the paragraph was read and that you had no objection either to form or content.
> The delay in preparing the child support order was due to your offices' failure to respond to requests from Judge Michalski's chambers. Judge Michalski's chambers then asked our office to prepare the order, which we did finally in December using Ms. Harris' own DR–305. A copy of the proposed order was mailed to your office as well as the final signed order.
> Under Alaska law, parents may not make child support agreements, which are not subject to 90.3. The only agreement that the parties can make is for the custodial parent to waive past child support owed by a non-custodial parent. The waiver issue in paragraph 10 pertained to Steven Westfall waiving his interest in any back child support owed to him by Ms. Harris. If you remember, Ms. Harris had never paid child support for Cayla.
> Therefore, based upon the above and Alaska law we will not sign a stipulation amending the settlement agreement.
> Very truly yours,
> ERWIN & ERWIN, LLC
> Roberta C. Erwin

motion, and sought $560, based on an hourly rate of $175. The affidavit of Westfall's attorney supported the request for attorney's fees. That affidavit addressed only the attorney's fees incurred, and did not attempt to rebut any facts described in Harris's affidavit or her attorney's memorandum. It provided no factual support for the arguments Westfall advanced in opposing Harris's Rule 60(b) motion to set aside the child support order. No other affidavit was offered by Westfall.

The superior court denied Harris's Rule 60(b) motion without explanation and awarded Westfall attorney's fees of $250. It then denied Harris's clarification motion.

We note that Harris's excerpts of record contain the objections dated December 17, 2001, but that the actual record does not contain a copy of the objections. They are not presently attached to the papers supporting the May 31, 2002 Rule 60(b) motion. As found in Harris's excerpt, the objections appear to bear a "12–17–01" certificate of service on Westfall's lawyer. Harris's lawyer seems to have signed this certificate. In opposing the motion for relief, Westfall's attorney never asserted that the objections had not been served on him in December, never contended that Harris had not attempted to object to the proposed support order, and never contended that the court could not consider Harris's intended objections on a theory they were not attached to the Rule 60(b) motion papers. Harris's opening and reply memoranda supporting her Rule 60(b) motion discussed the substance of the December 17 objections, and the order denying Rule 60(b) relief did not find that Harris failed to submit the objections with her Rule 60(b) motion. We therefore assume that the superior court, when considering the Rule 60(b) motion, was aware of the substance of Harris's intended objections to the proposed support order.

Harris appeals (1) the entry of the December 27, 2001 child support order, (2) the failure to require Westfall to file a child support guidelines affidavit, and (3) the award of attorney's fees against Harris. No

attorney has appeared for Westfall on appeal, and Westfall has filed no brief with us.

## III. DISCUSSION

### A. Standard of Review

■ We review fact findings for clear error.[3] We review an award of child support for an abuse of discretion, but exercise our independent judgment as to claims that the court applied an incorrect legal standard.[4] We review for abuse of discretion orders denying Rule 60(b) motions for relief from judgment.[5]

### B. Application of Alaska Civil Rule 60(b)

#### 1. Timeliness

■ Harris filed her motion for relief under Rule 60(b)(1), (3), and (6) on May 31, 2002, slightly more than five months after the superior court entered the December 27, 2001 child support order. The order was distributed on December 28. Rule 60(b) provides that a motion to set aside a judgment or order "shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the date of notice of the ... orders."

The affidavit of Harris and the memorandum representations of her attorney addressed and established the reasonableness of the delay. Harris's attorney discovered her secretary's deceit in February 2002. Certainly the delay until discovery was understandable and reasonable, as Westfall's superior court opposition seemed to tacitly concede. In the superior court, Westfall's attorney argued primarily that it was unreasonable for Harris not to move for relief more promptly after she learned of the secretary's deceit.

But the unrebutted circumstances described by Harris and her attorney convince us that there was no legitimate basis for concluding that Harris delayed unduly in moving for relief. The memorandum Har-

**3.** *Silvers v. Silvers,* 999 P.2d 786, 792 (Alaska 2000).

**4.** *Koller v. Reft,* 71 P.3d 800, 804 (Alaska 2003).

**5.** *Lowe v. Lowe,* 817 P.2d 453, 456 (Alaska 1991).

ris's attorney signed recites the efforts she made to convince Westfall's attorney to correct the order substantively and to permit the court to revisit the issue. Harris's affidavit recounted a conversation she had with Westfall in which Westfall acknowledged, apparently in April 2002, that the entry of an order requiring Harris to pay child support "was a mistake."

> He knew this was wrong and said he would have his lawyer fix it. He and I counted the days of custody in the order and he agreed he doesn't have primary custody, it is close to 50/50 because I have Cayla in the summer, 3 weekends per month, Spring Break and every in-service day.

Harris also stated in her affidavit that "[Westfall] called me back and said his lawyer wouldn't do it and advised him not to cooperate with me in fixing it." She also stated that in May she talked to Westfall and that "he again agreed this order is wrong but said his lawyer told him not to fix it."

Among other things, Harris's attorney attempted to take Westfall's deposition and served him with a subpoena in late March for a May 1 deposition. Westfall refused to attend the deposition.

■ These unrebutted circumstances establish that the Rule 60(b) motion was timely. What constitutes reasonable time necessarily depends on the facts in each case.[6] Courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party had some good reason for failing to act sooner.[7] Westfall did not demonstrate that he was prejudiced by the passage of time, and Harris demonstrated good reasons for not moving for relief sooner.[8]

Reasonable persons could not conclude on the undisputed record before us that Harris did not move for relief "within a reasonable time."

### 2. Misrepresentation

■ Rule 60(b)(3) permits relief from judgment entered as a result of misrepresentations.[9] We have held that negligent misrepresentations suffice.[10] But to obtain relief under Rule 60(b)(3) for negligent misrepresentation, a party must establish that the misrepresentation was material, i.e., that the misrepresentation prevented the party from fully and fairly presenting her case or defense.[11] The standard is clear and convincing evidence.[12] On the other hand, if a party establishes that the other party made misrepresentations with an intent to deceive, the burden may shift to the other party to establish that the misconduct did not interfere with the full and fair presentation of the case.[13]

■ The circumstances described by Harris and her attorney, and unrebutted by any responsive affidavit or evidence, establish that the proposed order submitted by Westfall misrepresented important facts, which may have convinced the superior court to enter the December 27, 2001 child support order.

For example, the proposed child support order, which was apparently intended to describe the custody awarded in the June 7 order, stated that Westfall would have "pri-

---

**6.** 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2866, at 382 (2d ed.1995).

**7.** *Id.* at 382–83.

**8.** *See Song v. Song*, 972 P.2d 589, 591–92 (Alaska 1999) (holding motion for relief, filed nine months after court entered decree of dissolution, timely because record supported finding movant did not learn details of disputed agreement until after court entered decree).

**9.** Alaska Rule of Civil Procedure 60(b) provides that a court "may relieve a party or a party's legal representative from a final judgment, order,

or proceeding for ... fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party...."

**10.** *Dickerson v. Williams*, 956 P.2d 458, 468 (Alaska 1998).

**11.** *Babinec v. Yabuki*, 799 P.2d 1325, 1333 (Alaska 1990) (citing *McCall v. Coats*, 777 P.2d 655, 658 (Alaska 1989)).

**12.** *Id.* (citing *McCall*, 777 P.2d at 658).

**13.** *Id.* (citing *Anderson v. Cryovac Inc.*, 862 F.2d 910, 923 (1st Cir.1988)).

mary physical custody" of Cayla and that Harris would have physical custody of the child "less than 30% of the year." But in fact, as Harris contended below, the June 7 custody order gave the parties shared physical custody of Cayla. We calculated the actual days awarded for a sample year, 2002. Our calculation is necessarily somewhat inexact, but seems to confirm that the June 7 Order awarded Harris about 130 overnights a year.[14] This was substantially more than the 110 days required to establish that the June 7 order awarded the parties shared physical custody and that it did not award Westfall "primary physical custody."

In opposing the Rule 60(b) motion, Westfall's attorney argued below, without citing any supporting authority, that weekend visitation beginning Friday after school and ending Sunday afternoon "would be" counted as only one night "under the rule." This theoretical justification for the representations made in the proposed child support order misreads Commentary V.A to Civil Rule 90.3. That commentary states that

> [i]n order for a day of visitation to count towards the required thirty percent, the children normally must remain overnight with that parent. (Thirty percent of the overnights in a year total 110 overnights.) Thus, a day or an evening of visitation by itself will not count towards the total of time necessary for shared custody. Visitation from Saturday morning until Sunday evening would count as one overnight.

The commentary indicates that overnights, not daytime visitation, are what should be counted. There is no reasonable legal or factual basis for Westfall's superior court assertion that visitation encompassing Friday and Saturday overnights should be counted as only one overnight, rather than two.

The proposed order also represented that Westfall was entitled to receive child support of $189.75. This figure was apparently derived by applying Rule 90.3(a) to Harris's income. But because custody was to be shared per the June 7 order, Rule 90.3(b), not Rule 90.3(a), should have governed child support. And, per the correct rule, it seems likely that child support should have flowed in the other direction, from Westfall to Harris.

The proposed order presented to the court in December 2001 therefore contained statements that misrepresented the true state of the parties' custody and visitation rights the court previously awarded. The statements that potentially misled the superior court are unquestionably misrepresentations for purposes of Rule 60(b)(3). We assume that they were unintentional, but they nonetheless justify relief under Rule 60(b)(3).

### C. Inadvertence

Rule 60(b)(1) permits relief from judgment entered as a result of inadvertence. A party seeking relief under Rule 60(b) must establish that she had good reason for failing to

---

**14.** We have attempted to calculate the number of overnights allocated to each party for one year, 2002. We based the calculation on the June 7 order, record information, and publicly available Anchorage School District Calendars for the 2001–2002 and 2002–2003 school years. Because 2002 was an "even" year, the order gave Westfall custody on Memorial Day Weekend, Halloween, Cayla's birthday (October 5), and Father's Day. It gave Harris Thanksgiving and Mother's Day. It split Cayla's Christmas vacation—January 1–6, December 21–31—evenly between Westfall and Harris. It gave Westfall all school-year overnights (from January 7 through June 7 and from August 25 through December 20), except that it gave Harris the first, second, and fourth weekends from Friday after school until Sunday mid-afternoon for those months. It also gave Harris Cayla's March 22–30 spring break. The order gave Harris all of the overnights from June 8 through August 24 except for

July 14–27, which it gave Westfall. We have followed the order's provision that holidays and vacations take precedence over weekend visitation, and have not added in "make-up" days to account for some overlaps. We are without information as to Harris and Westfall's birthdays, but even assuming that both days were given to Westfall, Harris apparently had at least 130 overnights with Cayla.

An alternative calculation confirms that the order gave Harris more than 110 overnights each year. Westfall contended in the superior court that the order granted Harris only 104 overnights, but his estimate was based on a bizarre assertion that an award of Friday night and Saturday night visitation counted as only one overnight. To compensate for his error, we add twenty-four overnights (three days for each of the eight school months) to his total of 104 overnights. The resulting total, 128, substantially exceeds 110.

act sooner, that she has a good claim or defense, and that she has moved to vacate judgment within a reasonable time.[15] The court will also consider whether reopening the judgment will cause hardship to the opposing party.[16] The authority to give relief granted by Rule 60(b)(1) has been exercised in a wide variety of cases, including cases in which an employee neglectfully or intentionally caused a party's attorney not to timely receive or file important litigation documents.[17]

■ The unrebutted contentions of Harris and her attorney establish that Harris's objections dated December 17, 2001 had not been filed. They also establish that it was through inadvertence that Harris and her attorney did not realize that the objections had not been filed or that the child support order was entered on December 27, 2001. This inadvertence required that the child support order of December 27, 2001 be set aside. It also required the superior court, before deciding on the merits whether to reenter that proposed order, to consider the objections Harris had previously attempted to submit in objecting to the proposed order.

Several of the grounds in Harris's objections were compelling and unrebutted. They establish that Harris's objections were meritorious. On its face, the June 7 order awarded Westfall and Harris shared physical custody of the child. Westfall therefore did not in fact have primary physical custody of the child. Therefore, just as Harris's objections contended, a "joint" child support calculation was required. As the objections contended, the court had to take into account each parent's earning capabilities to make that calculation. And as the objections also argued, before making that calculation, the court had to know Westfall's earning capacity and should have required him to submit a child support guidelines affidavit. Harris's objections explicitly raised these grounds. They should have carried the day had they been filed and considered in December 2001.

It may be that the superior court, in considering Harris's Rule 60(b) motion, rejected as inaccurate the factual assertions made in Harris's affidavit and her attorney's memorandum. But the court made no findings to that effect. Because the court did not find that these assertions were inaccurate, it was error to deny the Rule 60(b) motion.

### D. Calculating Child Support on Remand

Having concluded that it was an abuse of discretion not to grant relief from the child support order under Rule 60(b)(1) and (3), we remand. Assuming that the June 7 order awarded shared custody, it will be necessary to calculate child support under Rule 90.3(b). As Harris argued below, this will require Westfall and Harris to file current child support guidelines affidavits.

We also observe that the parties' settlement agreement remains in effect. That agreement stated that the court will make findings concerning the waiver of child support. In the superior court Westfall correctly argued that the parties could not waive child support absent findings from the court. Westfall then explained that the waiver was intended only to cover arrearages for child support Harris owed before the first custody order was entered. He claimed that Harris had accumulated arrearages because Cayla had been in his primary custody before the parties reached agreement in 2001. Since the parties did not violate public policy by agreeing to waive the arrearages Harris al-

15. *See* 11 WRIGHT, MILLER & KANE § 2857, at 260.

16. *See id.* at 260–62.

17. *See generally id.* § 2858, at 265, 271. *See also In re Cendant Corp. PRIDES Litig.,* 235 F.3d 176 (3d Cir.2000) (holding that mailroom sabotage that caused late filing was excusable neglect); *Carollo v. Global Cape Ann Corp.,* 627 F.Supp. 1507, 1508–09 (D.Mass.1986) (vacating for failure to state claim where plaintiffs did not receive defendant's motion until after court, believing motion to be unopposed, granted it), *overruled by* *Horsley v. Mobil Oil Corp.,* 825 F.Supp. 424 (D.Mass.1993) (recognizing that *Carollo* had been impliedly, if not expressly, overruled on other grounds by *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990)); *Ellington v. Milne,* 14 F.R.D. 241 (E.D.N.C.1953) (granting relief where neglectful employee caused summons and complaint to be put in storage so neither company nor attorney knew of summons until year after default was entered and where company had meritorious defense).

legedly accumulated before any custody or support order was entered, we deem this part of their agreement to be enforceable. Consequently, the superior court on remand should give effect to this limited waiver and to this part of their agreement. Doing so will preclude Westfall from claiming on remand that Harris owes child support for any period predating entry of the child custody order following the May 22, 2001 settlement conference.

But from the time of the settlement conference forward, the schedule agreed upon by the parties established the shared custody arrangement which thereafter should have governed the calculation of child support (absent any demonstration of changed circumstances). Because the superior court never made findings that would have justified a waiver of child support thereafter, the court on remand must calculate child support under Rule 90.3(b) from May 22, 2001 forward, after considering the parties' respective incomes.

We also observe that Harris was apparently willing in May 2001 to waive child support so she could obtain increased visitation. According to Harris's affidavit, Westfall was willing to agree to shared physical custody only if the parties waived child support. Because it appears that shared physical custody would have required Westfall to pay child support, in effect Harris tried to give up the opportunity to receive child support in order to obtain a more favorable visitation schedule. If this indeed was the basis for the parties' agreement, it is contrary to public policy, and could not justify excusing either parent from paying child support thereafter.[18]

### E. Attorney's Fees Award

Because we remand for entry of the relief Harris sought in the superior court, we vacate the award of attorney's fees.

They are suspect in any event. Westfall sought fees under Alaska Civil Rule 11, on the asserted ground that Harris's attorney had impermissibly alleged that the support order was issued due to a misrepresentation by an adverse party. We think there is ample support for that contention by Harris's attorney. The text of Harris's own affidavit permits an inference that Westfall and his attorney recognized that it was error to award child support against Harris. We also note the misrepresentations in the proposed order regarding the physical custody of the child. Therefore, the underlying premise for Westfall's attorney's fees request was wrong.

It is not clear why the court awarded attorney's fees. The order awarding fees does not refer to either Rule 11 or Rule 82. On remand, assuming the corrected child support order does not require Harris to pay child support, Harris may apply for an award of fees incurred during: (1) her attempts to obtain Westfall's agreement to set aside the patently incorrect child support order, and (2) her Rule 60(b) attempt to persuade the superior court to do so and to consider her substantive objections to the proposed support order.

### IV. CONCLUSION

We therefore REVERSE the order denying relief from the child support order, VACATE the child support order, VACATE the attorney's fees award, and REMAND with instructions to recalculate child support under Rule 90.3(b) from May 22, 2001 forward.

---

18. *Cf. State, Dep't of Revenue, Child Support Enforcement Div. v. Green,* 983 P.2d 1249, 1256 (Alaska 1999) (stating that private agreement between parents did not defeat state's right to recover AFDC payments); *see also State Dep't of Revenue v. Ortega,* 682 So.2d 589, 590 (Fla.Dist. App.1996) (stating that public policy precluded enforcement of agreement by mother to waive child support in exchange for father's waiver of visitation); *Cox v. Cox,* 776 P.2d 1045, 1048 (Alaska 1989) (stating that deviations from Civil Rule 90.3 child support guidelines must be based on good cause and child support awards should reflect child's needs and parents' abilities to pay).